IN THE CASE OF


UNITED STATES, Appellee

v.

Jose L. RODRIGUEZ, Sergeant
U.S. Army, Appellant

No. 01-0130

Crim. App. No. 9800800

United States Court of Appeals for the Armed Forces

Argued October 3, 2001

Decided March 13, 2002

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE and BAKER, JJ., joined. SULLIVAN,
S.J., filed an opinion concurring in part and in the result.


Counsel


For Appellant: Major Steven P. Haight (argued); Colonel Adele H. Odegard,
    Lieutenant Colonel David A. Mayfield (on brief); Major Jonathan F.
    Potter.


For Appellee: Captain Steven D. Bryant (argued); Captain Daniel G. Brookhart
    (on brief); Colonel Steven T. Salata and Major Paul T. Cygnarowicz.


Military Judge: Stephen V. Saynisch


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Rodriguez, No. 01-0130/AR

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of murder while engaging in an act inherently dangerous to another, in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 USC § 918. He was sentenced to a dishonorable discharge, confinement for thirty years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence, waived the forfeitures for a period of six months, and provided appellant with 151 days of confinement credit. The Army Court of Criminal Appeals affirmed the findings and the sentence in an unpublished opinion.

On appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY
> ADMITTING CERTAIN PORTIONS OF APPELLANT'S
> ADMISSIONS TO THE POLICE WHILE DISALLOWING
> OTHER PORTIONS.

We affirm for the reasons set forth below.

## I. Background

### A. Appellant's Seven Statements

Appellant's wife, Angela, died on January 3, 1998. The autopsy report indicated that her death resulted from suffocation due to a choke hold. Appellant did not contact

2

anyone concerning his wife until two days later, on January 5, when he called his mother-in-law from a pay phone. In the first of seven statements he would make over a three-day period, appellant told his mother-in-law that he and Angela had been abducted. He added that he had been hit over the head, which rendered him unconscious. He also told his mother-in-law that he did not know where his wife was, and that she had been bound and gagged in a car the last time he saw her.

After speaking with his mother-in-law, appellant made a "911" telephone call for emergency assistance. During the 911 call, appellant made his second statement during the following exchange with the 911 dispatcher:

Q: Police, may I help you?

A: Yes, my name is Jose.

Q: Yes.

A: And right now I don't know where I'm in--
me and my wife were burglarized at home.

Q: What happened now?

A: All I could remember is that me and my
wife, we got home and my house was
burglarized or whatever because I got
knocked out.

Q: Somebody came to your house?

A: I'm not even at the house. I'm somewhere-
-I don't even know where I'm at.

3

> Q: I know where you are, but somebody came to your house?
>
> A: I don't know, it seemed like two or three people--I don't know. This happened a while ago. This happened in the evening time----
>
> Q: Wait, wait. Will you speak into the phone? I can hardly hear you.
>
> A: I don't know if this happened before or what. I mean like tonight or the night before that. I don't even know what time it is or nothing like that.
>
> Q: You were passed out?
>
> A: I got knocked out, my head hurts.
>
> \* \* \*
>
> Q: So, you regained consciousness just now?
>
> A: I've been on and off. I just walked about--I don't know how long I walked to get a phone.

When officers from the Honolulu Police Department responded to appellant's 911 call, he made a third statement, which generally repeated the information in his call to the 911 dispatcher.

Later during the morning of January 5, appellant made his fourth statement during a formal interview with Honolulu police detective Philip Camaro from the Missing Persons/Homicide Unit. At this point, the body of appellant's wife had not yet been discovered and Detective Camaro was investigating Angela's disappearance as a missing person case. Detective Camaro testified that during this interview, appellant stated that

4

> two males attacked him and that... his head
> was covered with a bag and he was tied up
> and that as a result of the attack he was --
> found himself slipping in and out of a state
> of unconsciousness.
>
> *   *   *
>
> The next thing he recalls is he's in some
> car still bound, still with a bag over his
> head and the vehicle had stopped.  It was
> dark.  The males then removed him from the
> car.  During this process he was able to
> kick one of the males and force himself free
> and as he was running away he was still --
> he had loosened his bounds [sic] while in
> the car but he was able to loosen the rope
> and he was able to hop away and then
> eventually remove the rope and remove the
> bag.  Mr. Rodriguez also claimed that as he
> was fleeing or escaping he heard two or
> three shots fired in his direction.

Appellant told Detective Camaro that the last time he heard from his wife, she was upstairs in their home screaming while under attack by the intruders.  Police officers later discovered Angela Rodriguez's body in the back seat of the Rodriguez family car, which was located approximately one mile from the pay phone where appellant made the 911 call.

By the next day, January 6, the police determined that there were inconsistencies in appellant's first four statements. In addition, their review of the evidence recovered at appellant's home indicated that the "burglary" had been staged. As a result, the police conducted an interview of appellant on January 6, when he made his fifth statement.

5

Later on January 6, appellant made his sixth statement during a custodial interview with Honolulu police detectives Tamashiro and Wiese. In this statement, he confessed to killing his wife and fabricating his previous statements to cover up the crime. The interview was taped, and a seventy-three-page transcript was produced. The next day, January 7, Detectives Tamashiro and Wiese conducted another taped, custodial interview, at which appellant made his seventh statement. In this statement, which resulted in a forty-two-page transcript, appellant reiterated his confession.

## B. Trial Proceedings

At trial, the prosecution sought to prove the murder charge by asking the panel to draw an inference of guilt from the untruthful nature of appellant's first four exculpatory statements. The prosecution's evidence included a tape of appellant's 911 call, the testimony of his mother-in-law, the testimony of Detective Camaro, and the testimony of Honolulu police officer Eric Zarielo, who responded to appellant's 911 call. The prosecution also offered expert testimony from Dr. Bani Win, the Honolulu deputy medical examiner, to establish the cause and manner of Angela Rodriguez's death. Dr. Win, who conducted the autopsy, testified that Angela's death was due to "suffocation or asphyxia due to some sort of choke hold to the

neck." The Government did not introduce evidence of appellant's fifth, sixth, or seventh statements as part of its case-in-chief.

The defense sought to convince the panel that the death was the result of an accident during a domestic dispute that escalated into a physical confrontation in which appellant's wife was the aggressor. Although appellant did not testify, the defense attempted to introduce his testimony through appellant's sixth and seventh statements, the taped custodial interviews conducted on January 6 and 7 by Detectives Tamarshiro and Wiese. Trial counsel objected that these statements constituted inadmissible hearsay. Defense counsel responded that the statements were admissible under the rule of completeness. Defense counsel contended that the statements constituted a single admission over a period of days, and that the sixth and seventh statements should be introduced under the rule of completeness. The military judge rejected the defense position and ruled that the sixth and seventh statements were not admissible.

## II. The Rule of Completeness

The rule of completeness, which has its roots in common law principles of evidence, has two purposes: (1) to ensure "that the court not be misled because portions of a statement are

United States v. Rodriguez, No. 01-0130/AR

taken out of context," and (2) to avoid "the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171-72 n.14 (1988); see 7 Wigmore on Evidence § 2113 at 653 (Chadbourn rev. 1978).

Prior to the adoption of the Military Rules of Evidence in 1980, the military justice system had a limited rule of completeness applicable to confessions introduced against an accused, but did not have a general rule of completeness applicable to other forms of evidence. See para. 140a(6), Manual for Courts-Martial, United States, 1969 (Revised ed.); Stephen A. Saltzburg, Lee D. Schinasi, & David A. Schlueter, Military Rules of Evidence Manual 93 (4th ed. 1997).

Under the Military Rules of Evidence adopted in 1980, there are two distinct rules of completeness. Rule 106, the general rule of completeness, is virtually identical to its federal civilian counterpart, Fed. R. Evid. 106. Rule 304(h)(2), which applies when a confession or admission is introduced against an accused, has no express counterpart in the Federal Rules of Evidence. Although there are similarities between the two military rules, there are also significant differences in terms of purpose and scope.

8

A. <u>Military Rule of Evidence 106</u>

Mil. R. Evid. 106 provides:

> When a writing or recorded statement or part
> thereof is introduced by a party, an adverse
> party may require that party at that time to
> introduce any other part or any other
> writing or recorded statement which ought in
> fairness to be considered contemporaneously
> with it.

Manual for Courts-Martial, United States (2000 ed.).[*]

Rule 106 may be invoked by either the prosecution or defense to address matter introduced by the opposing party. The "primary concern of Rule 106 is the order of proof," permitting an adverse party to compel the introduction of favorable evidence during the opponent's case. 1 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u>, § 106.02[2] at 106-11 (Joseph M. McLaughlin ed., 2nd ed. 2001). As such, the rule "permits one party to require another party to introduce more evidence than the latter desires, or have the latter's case interrupted so that the additional evidence can be introduced." Saltzburg et al., <u>supra</u> at 92. Although an adverse party seeking to introduce evidence for purposes of completeness has the right to have the remaining evidence introduced contemporaneously with the proponent's evidence, the adverse

---

[*] All current Manual provisions cited herein are identical to the ones in effect at the time of appellant's court-martial.

party, for tactical reasons, may wait until later in the proceedings to introduce the evidence.  See id.

Rule 106 applies only to evidence that "ought in fairness to be considered contemporaneously" with the proponent's evidence, and does not necessarily require that the entire document be admitted into evidence.  See Weinstein, supra, § 106.03[1] at 106-17; Saltzburg et al., supra at 92-93; United States v. Cannon, 33 MJ 376, 383 (CMA 1991).  When a misleading impression might be created by introducing a document without accompanying documents or related correspondence, Rule 106 requires consideration as to whether the situation is one in which the proponent should compelled "to offer into evidence the entire correspondence or all accompanying documents that ought to be considered contemporaneously with the writing being introduced into evidence."  Weinstein, supra, § 106.04[1] at 106-19; see also United States v. Maracle, 26 MJ 431 (CMA 1988); United States v. Salgado-Agosto, 20 MJ 238 (CMA 1985).

The courts are split as to whether Rule 106, in addition to governing timing, also permits the introduction of evidence that otherwise would be inadmissible.  See Weinstein, supra, § 106.03[1] at 106-14; 1 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 4:10 at 317-19 (15th ed. 1997).  To the extent that otherwise inadmissible evidence may be

introduced, it comes in only at the insistence of the adverse party, who may waive the benefit of the rule.  See Saltzburg et al., supra at 92-93.

Because Rule 106 applies only to "a writing or recorded statement," it does not cover oral statements.  However, to the extent that Rule 106 is concerned with timing rather than admissibility, several commentators have observed that the judge may rely on Rule 611(a), regarding control over the mode and order of proof, to achieve the same effect as Rule 106 with respect to the time at which evidence may be introduced for purposes of "completeness." See Weinstein, supra, § 106.02[2]; Bergman & Hollander, supra at 313-14.

### B. Military Rule of Evidence 304(h)(2)

Rule 304(h)(2) provides:

> If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement.

The President's decision that the general provisions of Rule 106 should be supplemented by a specific rule of completeness for confessions or admissions introduced against the accused reflects longstanding military practice.  See William Winthrop,

11

United States v. Rodriguez, No. 01-0130/AR

Military Law and Precedents 327 (2d ed. 1920 Reprint) ("a confession, to be admitted, must be offered in its entirety, so that the whole may be taken together, and the complete purport may fully appear"); see also para. 225, Manual for Courts-Martial, U.S. Army, 1917; para. 114a, Manual for Courts-Martial, U.S. Army, 1928; para. 175, Naval Courts and Boards, 1937; para. 127a, Manual for Courts-Martial, U.S. Army, 1949.

Following enactment of the UCMJ, the President incorporated the rule of completeness with respect to confessions or admissions in paragraph 140a of the Manual for Courts-Martial, United States, 1951, as follows:

> If only part of a confession or admission (or supposed confession or admission) is shown, the defense by cross-examination or otherwise may show the remainder of the statement.

In United States v. Harvey, 8 USCMA 538, 546, 25 CMR 42, 50 (1957), our Court emphasized the fairness component of the rule of completeness: "It would be manifestly unfair to an accused to permit the prosecution to pick out the incriminating words in the statement or discussion and put them in evidence while at the same time excluding the remainder of the statement or conversation, in which the accused seeks to explain the incriminating passages."  When an oral admission and a written

12

confession are involved, the issue is "whether the accused's written statement is separate and unrelated from the oral confession, or whether it is part of or the product of the same transaction or course of action."  Id.

Harvey also identified the outer limit of the rule's coverage, stating that "a separate statement or utterance of an accused, which is totally disconnected or unrelated to the statement containing the confession is not admissible as part of such statement." Id.  With respect to the issue of whether two statements might be sufficiently connected so as to require the second to be admitted under the rule of completeness, the opinion noted that "the elapsed time between the two statements . . . is but one factor -- although an important one -- to be considered in every case." Id. at 546-47, 25 CMR at 50-51.  As an example of a situation in which a subsequent statement was held to be admissible under the rule of completeness, the opinion cited State v. Netherton, 279 P. 19 (Kan. 1929), in which the defendant had executed a written statement addressing questions from a sheriff that had been asked and answered over a period of several days.  Id. at 547, 25 CMR at 51.

In Harvey, we applied the foregoing considerations to a written statement executed nine days after an oral confession, and stating:

>       All factors considered, including the
>       elapsed time of nine days between the oral
>       confession and the written statement, that
>       the statement was made at the specific
>       request of counsel, and that the greater
>       part of the statement related to matter
>       wholly unconnected with the offense and with
>       the subject matter of the oral confession,
>       we believe the written statement was
>       unrelated to and constituted no part of the
>       oral confession.

Id. at 548, 25 CMR at 52.

The subsequent edition of the Manual reflected Harvey's approach to the rule of completeness in the context of confessions and admissions:

>       If only part of a confession or
>       admission or supposed confession or
>       admission of the accused is shown, the
>       defense by cross-examination or otherwise
>       may introduce all other parts of the
>       statement -- which may consist of a
>       connected series of statements -- that are
>       explanatory of, or in any way relevant to,
>       that part.

Para. 140a(6), 1969 Manual, supra. In other words, although a confession may be contained within a statement, aspects of the statement that were not part of the confession or otherwise explanatory of or in any way relevant to the confession were not admissible under the Manual's rule of completeness.

When the President promulgated the Military Rules of Evidence in 1980, the rules not only adopted the general rule of

completeness in Fed. R. Evid. 106, but also included Rule 304(h)(2), thereby continuing the special treatment of confessions in the military justice system. The Drafters' Analysis noted that Rule 304(h)(2) was "taken without significant change" from paragraph 140a(6) of the 1969 Manual. Manual, supra (2000 ed.) at A22-13. The Analysis also observed that in contrast to Rule 106's focus on written statements by an adverse party, Rule 304(h)(2) "allows the defense to complete an incomplete statement regardless of whether the statement is oral or in writing." Id.

The foregoing history indicates that Rule 304(h)(2): (1) applies to oral as well as written statements; (2) governs the timing under which applicable evidence may be introduced by the defense; (3) permits the defense to introduce the remainder of a statement to the extent that the remaining matter is part of the confession or admission or otherwise is explanatory of or in any way relevant to the confession or admission, even if such remaining portions would otherwise constitute inadmissible hearsay; and (4) requires a case-by-case determination as to whether a series of statements should be treated as part of the original confession or admission or as a separate transaction or course of action for purposes of the rule.

## C. <u>Rules 106 and 304(h)(2) Compared</u>

Rules 106 and 304(h)(2) both require an initial determination that a party has introduced an incomplete item. If the item is incomplete, then the opposing party may invoke Rule 106 or 304(h)(2), as appropriate, to ensure that the court-martial is not provided with a misleading portrayal of the initial statement. There are four major differences between Rule 106 and Rule 304(h)(2). First, the general rule of completeness in Rule 106 may be used by any party, but Rule 304(h)(2) may be invoked only by an accused, and only after the prosecution has introduced an alleged admission or confession. Second, Rule 106 applies only to documents and recordings, while Rule 304(h)(2) also covers oral statements. Third, Rule 106 is primarily concerned with timing, permitting a party to compel an opponent to introduce matter during the opponent's case-in-chief, while Rule 304(h)(2) is primarily concerned with authorizing the introduction of the substance of the "remaining portions of the statement" at issue. Fourth, Rule 106 provides the military judge with discretion to determine whether the additional material "ought in fairness" be considered with the original matter, whereas Rule 304(h)(2) requires admission of the "remaining portions of the statement" if such material falls

within the criteria set forth under the rule and applicable case law.

## III. Discussion

We review a military judge's decision to admit or exclude evidence for abuse of discretion. United States v. Ayala, 43 MJ 296, 298 (1995). Appellant contends that when the prosecution introduced appellant's first four statements -- the fabricated stories of a burglary and abduction -- the military judge erred in not permitting appellant to introduce his sixth and seventh statements -- the transcripts of his custodial interviews -- under the rule of completeness.

The prosecution provided evidence of appellant's first four statements through the recorded 911 call and the testimony of his mother-in-law, Detective Camaro, and Honolulu police officer Zarielo. Each of these statements was made during a discrete, complete event. Appellant has not shown, with respect to any of these communications, that he was somehow precluded from completing the content of his statements. Appellant's subsequent statements, which he sought to introduce at trial under the rule of completeness, were made at a different time, at a different place, and to a different set of persons. Although the latter statements may rebut, explain, or modify the content of his earlier statements, they are not admissible under

17

the rule of completeness because they were not part of the same transaction or course of action.

Rule 304(h)(2) is designed to protect an accused from the prosecution's misleading use of excerpts of an admission or confession.  It does not permit an accused to engage in a pattern of deception with a variety of persons, and then argue that belated candor in a different setting justifies the introduction of otherwise inadmissible hearsay.

In the present case, the defense sought to introduce appellant's sixth and seventh statements as the basis for contending that his wife's killing was accidental.  The Government's trial strategy, which did not involve introduction of those statements as part of its case-in-chief, thwarted that plan.  As a result, the defense had to choose between putting appellant on the stand, which would have subjected him "to the crucible of cross-examination," United States v. Stark, 24 MJ 381, 385 (CMA 1987), or forgoing use of the statements.  The rule of completeness is an evidentiary rule designed to promote fairness by precluding unfair omissions, not a rule intended to allow an accused to avoid the "crucible of cross-examination." Id.; see also United States v. Williams, 43 MJ 348, 354 (1995).

Appellant also contends that his sixth and seventh statements should have been admitted during cross-examination of

18

the prosecution's expert witness, Dr. Win.  Dr. Win testified on direct examination that Angela's death was due to suffocation caused by application of a choke hold about her neck.  Dr. Win also gave detailed testimony about the choke hold maneuver and how its use may cause death depending on the amount and length of time pressure is applied to the carotid artery.  During defense counsel's cross-examination, Dr. Win acknowledged that she could not precisely ascertain how Angela Rodriguez was suffocated because there were no signs of injury or trauma around Angela's neck.  She added that this was not unusual in suffocation cases.  In response to defense counsel's cross-examination, Dr. Win stated that she relied on appellant's admissions, as related to her by the Honolulu investigators, to conclude that appellant's wife was suffocated to death by a choke hold.

A party-opponent may test the basis of an expert's opinion by inquiring into the facts and data underlying that opinion. See Mil. R. Evid. 703 and 705.  In the present case, defense counsel was entitled to test the factual basis of Dr. Win's expert opinion as to the manner of Angela Rodriguez's death. The military judge permitted the defense to elicit testimony from Dr. Win that her conclusion was based on information obtained from appellant's confession.  After the military judge

allowed this line of questioning, however, defense counsel did not move to introduce the statements from appellant at issue in the present appeal under the rule of completeness.  The rule of completeness under Rule 304(h)(2) is a tool that is available to the defense if the defense chooses to use it.  In the absence of a defense request, the military judge was not called upon to decide whether the rule of completeness applied after references to appellant's confessions were elicited by the defense during cross-examination, and, if so, which statements by appellant were covered by the rule of completeness.  Under these circumstances, there was no error.

## IV.  Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Rodriguez, No. 01-0130/AR

SULLIVAN, Senior Judge (concurring in part and in the result):

The majority makes clear that Military Rule of Evidence 106 applies to the completion of "a writing or recorded statement," not to the completion of an oral statement. See United States v. Goldwire, 55 MJ 139, 146-48 (2001) (Sullivan, J., concurring in the result)(Baker, J., concurring in the result). It also makes clear that Mil.R.Evid. 304(h)(2) is the rule of completeness at courts-martial with respect to oral (and written) statements that are admissions and confessions. I agree.

In this light, I turn to the evidence of record in this case. The prosecution was allowed to evidence four pretrial statements made by appellant which were clearly exculpatory in nature. In these statements, he basically asserted that his home was invaded by several unknown persons; they beat him and his wife; and they abducted him in a car from which he eventually escaped. The prosecution declined to evidence three other exculpatory statements subsequently made by appellant, where he claimed that he killed his wife in self-defense during a domestic disturbance. Appellant sought admission of his later statements under "the rule of completeness." (R. 278)

I initially note that the Government evidenced appellant's telephone statement to his mother-in-law by calling her as a witness at this court-martial. (R. 228, 235) Trial counsel,

however, also evidenced appellant's oral statement to a police emergency operator by introducing a recorded copy of their phone conversation.  (R. 138, PE 43)  Trial counsel further evidenced appellant's oral statement to police officers responding to his emergency call by calling one of those officers as a witness. (R. 346-48)  Finally, it introduced evidence of his oral statement to a missing person police investigator by calling as a witness the investigator who heard his statement.  (R. 272, 280-82)

The military judge made a general decision that appellant's fifth, sixth, and seventh statements made to police, which suggested he acted in self-defense during a domestic row, could not be admitted by the defense under the rule of completeness. (R. 279)  Neither the defense nor the Government nor the military judge distinguished between Mil.R.Evid. 106 or 304(h)(2).  I think it is important that this Court do so because these are different Manual rules with different evidentiary requirements.

Mil.R.Evid. 106 states:

> Rule 106.  Remainder of or related writings or recorded statements
>
> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

2

(Emphasis added.)  Here, the tape recording of appellant's telephone conversation with the 911 operator (his second statement) was introduced as evidence by the prosecution.  Unlike United States v. Goldwire, supra, where no writing or recorded statement was evidenced, Mil.R.Evid. 106 was applicable in this case.

Nevertheless, in my view, fairness did not require that the military judge allow the defense to admit evidence of appellant's fifth, sixth, and seventh statements to members of the Honolulu police department.  These statements did not clarify the telephone conversation with the 911 operator or contribute to the understanding of its meaning.  They contradicted the earlier telephone call, and their admission under this rule was an obvious attempt to permit appellant to parade his second exculpatory story before the members and avoid the crucible of cross-examination.  In these circumstances, a sound basis existed for the judge's decision to refuse to admit this evidence under this evidentiary rule.

Turning to Mil.R.Evid. 304(h)(2), it states:

> (2) Completeness.  If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement.

3

United States v. Rodriquez, No. 01-0130/AR

(Emphasis added.)  For the reasons stated by the majority, I conclude that the fifth, sixth, and seventh statements were not "remaining portions of the" first four "statements."  See generally United States v. Harvey, 8 USCMA 538, 546, 25 CMR 42, 50 (1957) (articulating a separate and unrelated rule).  In addition, the first four statements made by appellant concerning his purported home invasion by strangers certainly did not constitute a confession.  Although he asserted certain facts in these statements, they were exculpatory, not inculpatory, on their face.  I question whether Mil.R.Evid. 304(h)(2) is applicable in these circumstances.[*]

A final question raised is whether the defense was entitled to introduce the entirety of these statements because the prosecution's medical expert testified on cross-examination by defense counsel that she relied on a part of these statements in determining the cause of death ("anoxic brain damage due to suffocation or choke hold kind of procedure"). (R. 419, 430-31) The witness stated: "They [the police] said that the accused had confessed to having a choke hold kind of grip on the decedent," and she said that was the only information she received from the police as to appellant's pretrial statements. (R. 433) The military judge allowed the expert to testify that she relied on

---

[*]    See Mil.R.Evid. 304(c)(1)("A 'confession' is an acknowledgement of guilt."); Mil.R.Evid. 304(c)(2) ("An 'admission' is a self-incriminating statement falling short of an acknowledgement of guilt, even if it was intended by its maker to be exculpatory.") (emphasis added).

4

this particular statement from appellant in reaching her expert opinion on the case of death. (R. 434-35)

In my opinion, no violation of Mil.R.Evid. 703 and 705 occurred in this case for the reasons pointed out by the majority. No Mil.R.Evid. 106 or Mil.R.Evid. 304(h)(2) violation also plainly occurred here. It was the defense, not the Government, who first introduced evidence of appellant's later admissions at his court-martial.