**UNITED STATES of America**

**v.**

**Robert K. FOISY, Private First Class (E–2), U.S. Marine Corps.**

**NMCCA 201000026.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 26 Aug. 2009.

20 July 2010.

For Appellant: Maj Sean Patton, USMC; LT James Head, JAGC, USN.

For Appellee: Capt Mark Balfantz, USMC.

Before REISMEIER, Chief Judge, MAKSYM and BEAL, Appellate Military Judges.

**PUBLISHED OPINION OF THE COURT**

REISMEIER, Chief Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of violating a lawful general order and aggravated sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920. The members sentenced the appellant to one year of confinement, reduction to pay grade E–1, total forfeitures, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered the sentence executed.

The appellant's sole assignment of error was that the military judge abused his discretion by preventing the defense from presenting the appellant's initial statement to the Naval Criminal Investigative Service (NCIS) after the Government admitted his supplemental NCIS statement. We agree.

**Background**

Lance Corporal (LCpl) S knew the appellant from MOS school and "hung out" with him when she checked into her unit on Camp Lejeune. Record at 126, 146–47. On 28 November 2008, the appellant, LCpl S, LCpl Rumsey, and two other Marines drank alcohol in the appellant's barracks room. *Id.* at 128–30. All of the Marines but LCpl S were male. LCpl S testified that she had about four to five beers, a frozen alcoholic drink, and a few sips from other's alcoholic drinks, but that she was not drunk. *Id.* at 131, 150. LCpl S testified that at the end of the night she got into a single bed with LCpl Rumsey in the appellant's room, and fell asleep wearing a t-shirt, underwear, and sweat pants with the draw string tied. *Id.* at 135, 152–54. LCpl S testified that she woke up because she felt something penetrating her vagina and realized she was naked from the waist down. *Id.* at 135–36, 155–57. LCpl S woke LCpl Rumsey and yelled at the appellant, who was then lying on the floor next to the bed completely covered by a blanket. *Id.* at 136–37, 158, 178. LCpl S removed the appellant's blanket, and observed that he was naked from the waist down and appeared to be sleeping. *Id.* at 137–38; 178–79. LCpl Rumsey got out of the bed and found LCpl S's underwear and pants on a stand about ten feet away from the bed. *Id.* at 178. LCpl S left the room and made an allegation of sexual assault against the appellant later that day. *Id.* at 138, 142.

The appellant gave two written statements to NCIS. The appellant's statement of 30 November 2008 to Special Agent (SA) Scoval was a three-page, handwritten, comprehensive narrative of the events of 28 and 29 November 2008. Defense Exhibit B for Identification. On 26 January 2009, NCIS brought the appellant back for a second interview with a different agent, SA St. Clair. Record at 191–96; Prosecution Exhibit 4. The agent asked the appellant if he would be willing to give another statement with "additional details." Record at 195. The appellant agreed and gave a supplemental, typed statement that was more focused in its scope. *Id.* at 195–96. The second statement did not include the detail in the first statement, especially concerning the events leading up to the sexual contact, but included the appellant's claim that LCpl S consented to the sexual contact, or at least appeared to be consenting. DE B FID; PE 4.

At trial, the Government called SA St. Clair as a witness to introduce the appellant's second statement. Record at 191. When asked to describe how she used the rights advisement form to notify the appellant of his rights, SA St. Clair stated that:

[t]his was the second interview of PFC Foisy. I was not there for the first one, but I did say—I asked him if he knew why he was there. We didn't ask any specific questions. And I just let him know that we were going to go over the same form that he had filled out with the prior agents....

Record at 191. When asked by the trial counsel to describe what she did after she advised the appellant of his rights, SA St. Clair testified, "Since it was the second interview and he kind of knew why he was there, I basically asked him to walk me through the evening again, I had a few extra questions after I looked at his first statement." *Id.* at 193–94. Finally, when asked by the trial

counsel what she did after the appellant again discussed the events of the evening in question with her, SA St. Clair stated that she "typed in this second sentence here where it says this is a supplementary statement just indicating that this is not the first statement he gave...." *Id.* at 195. The "supplementary" statement was admitted into evidence. *Id.* During cross-examination, SA St. Clair again noted that PE 4 was the result of a reinterview, and that the appellant had given a prior statement. *Id.* at 198. SA St. Clair likewise stated that SA Greg Scoval was the first agent on the case. *Id.* SA St. Clair stated that the initial statement was made on 30 November, and that it was contained in her case file. *Id.* at 198–99.

After the Government rested, trial defense counsel attempted to introduce the initial statement, taken by SA Scoval on 30 November 2008. Record at 195, 204–09; DE B FID. The Government objected, citing hearsay, lack of foundation, and MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). Record at 204–09. Trial defense counsel argued that the initial statement should be admitted under the rule for completeness. *Id.* at 204. The military judge sustained the Government's objection; ruling that:

> I don't see that the two limited reference[s] in the subsequent statement in fairness opens the door to bringing in the first statement because without that first statement the members can't put the second statement in context .... in the subsequent statement you can read it and say, okay, the only question in my mind when I read this second statement is that at some point in time this individual made a previous statement but I don't need that to understand what he's saying in this second statement. So I don't agree with the 106 analysis and I'm sustaining the objection based on hearsay. There was also an objection for lack of foundation.[1] At this point since we're not offering any founda-

tion to admit this, I'll sustain it for that reason as well.

*Id.* at 210–11.

## Rules of Completeness

The rules of completeness exist to ensure that the court is not misled because portions of a statement are taken out-of-context, and to avoid the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material. *United States v. Rodriguez*, 56 M.J. 336, 339 (C.A.A.F.2002). There are two distinct rules of completeness: MIL. R. EVID. 106 and 304(h)(2). Both rules require an initial determination that a party has introduced an incomplete item. *Id.* at 342. If the item is incomplete, then the opposing party may invoke MIL. R. EVID. 106. The accused may also invoke MIL. R. EVID. 304(h)(2) when the document at issue involves an admission or confession. *Id.*

Rule 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106 "permits one party to require another party to introduce more evidence than the latter desires, or have the latter's case interrupted so that the additional evidence can be introduced." *Rodriguez*, 56 M.J. at 340 (citation and internal quotation marks omitted). "Although an adverse party seeking to introduce evidence for purposes of completeness has the right to have the remaining evidence introduced contemporaneously with the proponent's evidence, the adverse party, for tactical reasons, may wait until later in the proceedings to introduce the evidence." *Id.*

Rule 304(h)(2) provides: "If only part of an alleged admission or confession is introduced against the accused, the defense, by

---

1. The military judge's ruling appears to reach foundation as a result of rejecting the appellant's argument under the rule of completeness. Regardless, based upon the facts, we are satisfied that an adequate foundation was laid to reach the completeness argument. There is no genuine argument that DE B FID is not the statement taken by SA Scoval on 30 November 2008, or that it is not the "other" statement that PE 4 was intending to supplement.

cross-examination or otherwise, may introduce the remaining portions of the statement." This rule is designed to protect an accused from the prosecution's misleading use of excerpts of an admission or confession, and "permits the defense to introduce the remainder of a statement to the extent that the remaining matter is part of the confession or admission or otherwise is explanatory of or in any way relevant to the confession or admission, even if such remaining portions would otherwise constitute inadmissible hearsay." *Id.* at 342. The rule requires a case-by-case determination as to whether a series of statements should be treated as part of the original confession or admission, or as a separate transaction or course of action for purposes of the rule. *Id.*

We review a military judge's decision to admit or exclude evidence for abuse of discretion. *Id.* To be overturned on appeal, the military judge's ruling must be "arbitrary, fanciful, clearly unreasonable or clearly erroneous," or "influenced by an erroneous view of the law." *United States v. Johnson,* 62 M.J. 31, 34 (C.A.A.F.2005) (citations and internal quotation marks omitted). In deciding whether the military judge abused his discretion, the following non-exhaustive list of factors can be gleaned from *Rodriguez:* (1) Has the prosecution attempted to "pick out the incriminating words in the statement or discussion and put them in evidence while at the same time excluding the remainder of the statement or conversation, in which the appellant sought to explain the incriminating passages"? (2) Is the appellant's subsequent statement separate and unrelated from the subject matter of the original confession, or is it part of or the product of the same transaction or course of action? (3) What is the elapsed time between the two statements, and were they made at different places and to a different set of persons? (4) Was the second statement made at the specific request of the appellant or the Government? (5) Was the defense invoking the rule of completeness as a matter of fairness, or merely attempting to present evidence of a defense without subjecting the appellant to

cross-examination? (6) Did the appellant engage in a "pattern of deception with a variety of persons, and then argue that belated candor in a different setting justifies the introduction of otherwise inadmissible hearsay"? *Id.* at 341–43 (citing *United States v. Harvey,* 25 C.M.R. 42, 1957 WL 4645 (C.M.A.1957)).

## Discussion

Both MIL. R. EVID. 106 and 304(h)(2) apply in this case. The only factors clearly weighing in favor of exclusion of the initial statement are that the statements were taken about two months apart, and that the statements were taken by different agents. A closer balance exists with regard to the fifth factor. Undeniably, the appellant would have been able to present evidence of his defense without subjecting himself to cross-examination, and the complete statement would have provided a far more exhaustive explanation of events than contemplated by the Government when the partial statement was offered and admitted. However, on balance, this factor weighs in favor of admission of the statement as well, for the Government made the election to offer part of the statement in the first instance, prompting the defense to seek fairness through completion. The rules of completeness exist to address precisely what unfolded at trial in this case.

The appellant's initial statement of 30 November 2008 to SA Scoval, DE B FID, provided a detailed explanation of the evening in question, as well as events of the previous few days that bore on the matter in controversy. In DE B FID, the appellant noted that LCpl S had been "giving me strong sexual signs like saying I can't wait to have sex again because her boyfriend is gone right now[, and] she would touch my stomach and when she hugged me she would grind herself into me...." [2] DE B FID at 2. He also stated that when he left the room, LCpl S was wearing sweat pants and a hooded sweatshirt, but when he reentered the room, she climbed into bed with LCpl Rumsey wearing only a tee shirt and underwear, getting into the rack with LCpl Rumsey. Shortly thereafter, the appellant awoke with

---

**2.** As the military judge noted, some of the appellant's 30 November statement included material that may have been inadmissible under MIL. R.

EVID. 412. This opinion concerns itself only with those portions of the statement not the subject of appropriate exclusion under that rule.

LCpl S at the sink washing her mouth out with water and making statements about being hot. He further said that LCpl S began to take her underwear off, but that he told her not to. According to the appellant's statement, a short time later LCpl S again got out of the rack and went to the sink, made additional statements about being hot and then took off her underwear. According to the appellant, LCpl S then stepped over him, got back into the rack, naked from the waist down, with her buttocks hanging over the bed, "kind of stuck up in the air like she was waiting for some one [sic] to do something. . . ." *Id.* at 3. The appellant stated that he covered LCpl S, but that she uncovered herself again. It was at that point that the appellant says he made physical contact with LCpl S. *Id.*

In the statement admitted by the military judge, the appellant's version begins when the appellant was nude, looking at and touching a naked LCpl S. PE 4 omits all of the details which put the touching in context. PE 4. The admitted statement literally drops the reader into the middle of the interaction at the point of alleged criminality, taking the appellant's admissions so out of context as to be completely misleading. The closest the supplemental statement gets to the appellant's original description of a consensual encounter is a reference to the first statement: " . . . she seemed like she was enjoying it like in my *other* statement when I was touching her she would push her buttocks towards me." *Id.* The admitted, "supplementary" statement omits the appellant's assertions that LCpl S took off her own clothes, that she acted flirtatiously and provocatively earlier in the evening and immediately before the sexual contact, and that she uncovered her bare buttocks after the appellant tried to cover her.

The appellant made two statements, in the same place, to agents of the same criminal investigative agency, explaining the same events, to defend against the same accusation. DE B FID; PE 4. The two statements are manifestly related. In fact, inclusion of the qualifying language, "[t]his is a supplementary statement to add to the previous statement I gave to NCIS investigators," reflects the dependent nature of the admitted statement to the excluded statement. Standing alone, PE 4 contains a statement, incriminating when taken out-of-context, which was "picked out" and presented to the members, while every effort was made to prevent the members from seeing the rest of the statement explaining that out-of-context statement. We reject any argument that the appellant himself was the architect of the second, admitted statement, and thus, should bear the impact of his own admissions as they stand, precisely because the agent's interrogation methodology blunted any need to again provide the details of the first statement: the appellant did not include the background details because the agent's own drop-in line [3] explicitly incorporated the first statement into the "supplementary" statement. It is "manifestly unfair" to require the appellant to face his inculpatory admissions while simultaneously barring him from introducing the very statement his inculpatory remarks specifically supplemented by reference, especially when, as in this case, the appellant's story did not change. *Rodriguez,* 56 M.J. at 341.

We distinguish this case from the facts and the concerns expressed in *Rodriguez,* wherein the Court of Appeals for the Armed Forces affirmed a decision to exclude statements made by Rodriguez. In *Rodriguez,* the appellant's *initial, exculpatory* statements about a burglary (later proven to be a complete fabrication) were admitted into evidence. His later statements admitting to the killing but alleging self-defense were not admitted. *Rodriguez,* 56 M.J. at 338–43. Likewise, this case is unlike *Harvey,* 25 C.M.R. at 42, wherein the court upheld a trial decision to exclude a statement he made 9 days after his initial inculpatory statement at the direction of his defense counsel. In this case, we address a scenario where the

---

3. We note again that SA St. Clair testified that she typed in the stand-alone line in PE 4 that says "This is a supplementary statement to add to the previous statement I gave to NCIS investigators." Record at 195. Her action mooted any need for the appellant to again put his admissions in context. Said differently, her action put his more recent admissions in context that the Government should, in fairness, have had to present at trial.

appellant's initial exculpatory statement (handwritten less than two days after the night of the alleged assault) was excluded, and a subsequent "supplemental" statement, so designated by both the appellant and the agent taking the statement, (taken 2 months later at the request of NCIS) was admitted. The appellant in this case was not trying to give an exculpatory statement after he had already given an incriminating statement, not acting at the request of counsel, and none of the appellant's statements in this case were a clear fabrication.

We are mindful that there was a substantial separation in time between the 30 November 2008 and the 26 January 2009 statement. We are also mindful that, as the military judge noted, the 30 November statement was "not need[ed] to understand what [the appellant was] saying in [the 26 January] statement." Record at 211. However, neither of those factors are dispositive, especially where, as here, the context of the statement admitted at trial was not revealed to the fact finder, and what one would understand from the admitted statement, standing alone, differs drastically when viewed in context of the whole.

 The Court of Appeals for the Armed Forces stated in *Rodriguez* that " 'the elapsed time between two statements . . . is but one factor—although an important one—to be considered in every case.' " *Rodriguez,* 56 M.J. at 341 (quoting *Harvey,* 25 C.M.R. at 50–51). Two paragraphs later, the court in *Rodriguez* noted that the 1969 version of the Manual for Courts–Martial reflected the Harvey approach by specifically explaining that other parts of the statement "may consist of a connected series of statements—that are explanatory of, or in any way relevant to, that part." *Rodriguez,* 56 M.J. at 341 (internal quotation marks and citation omitted). We therefore hold, under the facts of this case, that where the Government links two statements by constructing them as a statement and a "supplement" to that statement, the Government may not deconstruct those

statements for purposes of trial where admission of the second statement standing alone would create a misimpression on the part of the fact finder as to an accused's actual admissions. The rule of completeness is neither a sword with which an accused might introduce evidence to avoid the crucible of cross-examination, nor a shield behind which the true nature of an accused's admissions may be hidden.

 Because we find that DE B FID was an omitted portion of the appellant's statement to NCIS, we find the military judge erred [4] by sustaining the Government's objection on the grounds of hearsay. Rule 304(h)(2) specifically allows an accused to introduce portions of his own statement after other parts of that statement have been introduced against him; in effect the rule operates as an exception to the hearsay rule. Because only part of the appellant's statement to NCIS was admitted as PE 4, suppression of DE B FID on the basis of hearsay was an abuse of discretion.

### Prejudice

 If a military judge abuses his discretion by admitting or excluding evidence, we determine whether the error materially prejudiced the substantial rights of the accused. *Johnson,* 62 M.J. at 35; Art. 59(a), UCMJ, 10 U.S.C. § 859(a). "For a nonconstitutional error, the Government must demonstrate that the error did not have a substantial influence on the findings." *Johnson,* 62 M.J. at 35. We "evaluate prejudice from an erroneous evidentiary ruling by weighing: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr,* 51 M.J. 401, 405 (C.A.A.F.1999). This test is used for erroneous admission of Government evidence and erroneous exclusion of defense evidence. *Id.*

(1) *Strength of the Government's case.* The Government's case largely depended on the credibility of LCpl S, which was called

---

4. We also note that the military judge's determination that the contents of the appellant's admissions were hearsay necessarily would have made futile any further attempt by the appellant to

elicit his 30 November statements from a testifying witness (such as the NCIS SA), notwithstanding the military judge's invitation to the appellant to do just that. Record at 211–12.

into question when she testified that when she went to bed she was fully clothed in sweatpants with a drawstring tied in a knot, and that she was not drunk. This raises questions as to how her clothes were taken off and placed on a stand across the room without her or LCpl Rumsey waking up on the small bed they were sharing. Record at 131, 152, 178. The admission of the supplement to the first statement, standing alone, strengthened the Government's case by presenting an admission by the appellant of touching LCpl S while avoiding any explanation of what led up to the touching. Had the complete statement been admitted, the relative strength of the Government's case would have been significantly altered.

(2) *Strength of the defense case.* The defense attacked the credibility of LCpl S and argued mistake of fact as to consent using the appellant's statement. Without the complete context of the appellant's admissions, the defense case was weak, even if sufficient to raise the defense of consent or mistake of fact as to consent. His admission that he touched LCpl S and that she seemed like she enjoyed it was uprooted from the full admissions the appellant made that explained why his defense made any sense at all. The exclusion of the initial statement, which explained the events leading up to the sexual contact, weakened the defense's argument.

(3) *Materiality of the evidence in question.* The initial statement was material, as it put the supplement to that statement in context, and was the cornerstone of the consent defense. The initial statement provided the full explanation as to why the appellant may have believed his actions were invited. Exclusion of the statement deprived the fact finder of the necessary information to evaluate both the admissions of the appellant and the unanswered questions left by LCpl S's testimony.

(4) *Quality of the evidence in question.* The initial statement was hand-written, detailed, comprehensive, and was taken less than two days after the alleged sexual assault. It provided a detailed description of the days, hours and minutes leading up to the alleged sexual assault, and was at least of better quality than the second statement.

After weighing the *Kerr* factors, we find that the Government has failed to demonstrate that the error did not have a substantial influence on the findings. On the contrary, we find that the exclusion of the initial statement, coupled with the admission of a "supplement" to that statement, substantially mislead the members as to the appellant's actual admissions. Under these facts, while the 30 November 2008 statement may not have been necessary to reach an understanding as to what the appellant was saying in the 26 January 2009 statement, what the members would have understood based on the truncated 26 January statement standing alone was misleading. We therefore set aside the findings of guilty for aggravated sexual assault, Charge II, Specification 1.

## Conclusion

We affirm the findings of guilty for Charge I and its specification. The findings of guilty for Specification 1 of Charge II and Charge II are set aside. The sentence is set aside. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority who may order a rehearing on Charge II and its specification. If there is not a rehearing on the findings, a sentence rehearing on the remaining charge and specification may be held. If the convening authority determines that a sentence rehearing is impracticable, then he may approve a sentence of no punishment.

Senior Judge MAKSYM concurs.

BEAL, Judge (dissenting):

I would not reach the assigned error for the reasons stated in my dissent to *United States v. Medina,* 68 M.J. 587, 596 (N.M.Ct. Crim.App.2009), *rev. granted,* 69 M.J. 61 (C.A.A.F.2010). Nonetheless, I fully concur with the majority's analysis of the evidentiary issue. I would set aside the conviction for aggravated sexual assault, dismiss Charge II and its specification, and authorize a rehearing on sentence for the orders violation.