# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 NICHOLAS A. YANCEY**
**United States Army, Appellant**

ARMY 20120393

Headquarters, U.S. Army Signal Center of Excellence and Fort Gordon
Tiernan P. Dolan, Military Judge
Colonel John P. Carrell, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain J. Fred Ingram, JA (on brief)

For Appellee:  Major Robert A. Rodrigues, JA; Captain Daniel H. Karna, JA (on brief).

8 December 2014

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge and to be confined for eight months.  The convening authority approved the adjudged sentence.

Appellant's case is now before this court pursuant to Article 66, UMCJ.  Appellant raises three assignments of error, one of which merits discussion and relief.  As our relief consists of setting aside the findings and sentence, we need not discuss the other two assignments of error or the matters personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**BACKGROUND**

a. **Background of the Offenses**

In September 2010, appellant was listening to music on his laptop computer in his barracks room at Fort Gordon. Appellant's roommate, Private (PV2) JH, was enjoying the music and got appellant's permission to look through appellant's music collection on that laptop computer. Private JH began to scroll through appellant's music files and noticed some video files. A video file with an "odd" title caught his attention, so he opened it.

The video displayed an adult male with his exposed erect penis prodding, smacking, and rubbing a naked female toddler child on her genitals with his penis.

Private JH, disgusted by the contents of the video, confronted appellant and asked, "[w]hat the hell is this?" Appellant started laughing and responded, "[s]he looks likes she's enjoying it." Appellant then told PVT JH he downloaded the video from a program called "Lime Wire." Private JH warned appellant about the dangers of downloading viruses while using the Lime Wire peer-to-peer file sharing program. Private JH also told appellant to delete the file. At some point, the file was deleted from appellant's computer.

In November 2010, after speaking with another soldier about seeing the video on appellant's computer, PVT JH reported the incident to Criminal Investigation Command (CID). CID seized and searched appellant's computer. Three child pornography videos were found on appellant's computer and formed the basis of the sole charge and specification in this case.[1]

According to the government's expert, one suspected child pornography video was partially downloaded via the "Frost Wire" peer-to-peer program. The expert could not state what interrupted the download.

A second suspected child pornography video, fully downloaded via Frost Wire, was also found on appellant's computer. The government's expert also testified the Frost Wire program was installed on 11 November 2010, and the two aforementioned videos, along with the third multiplicious preview video, were downloaded within 30 minutes of the program being downloaded. A third non-active

---

[1] A fourth video, a "preview" of the fully downloaded video, was found on appellant's computer. The military judge viewed the video and determined that because it was a portion of the full length video already contained in the specification, it was multiplicious. Hence, he deleted it from the charged offense.

video was found in the "free space" of the computer's hard drive among deleted files. This file had been partially written over by other files since its deletion. CID was able to recover and extract portions of the deleted file, allowing PVT JH to identify it as the file he viewed in appellant's room in September. This was the video that the government alleged was downloaded via Lime Wire.

The government's expert witness also testified that she discovered approximately 118 pornographic video files in appellant's Frost Wire folder. However, in the opinion of the expert, none of these files contained child pornography. These Frost Wire files were downloaded under the password-protected username "Nick," which is a variation of appellant's first name. Of these files, approximately 95% had file names associated with child pornography, such as "child" or "preteen." However, the expert could not forensically link any search terms to any Frost Wire files because she could not find any corroborating evidence of forensic markers establishing that the person at appellant's computer was the person typing the search terms. The government's expert witness further testified that another person at another computer could "piggyback" search terms onto appellant's computer, and that the owner of the computer would not know that his computer was being piggybacked.[2] As a result of piggybacking, the search terms from the other computer would be left on the piggybacked computer.

### b. Appellant's Cross-Examination of PVT JH at Trial

A primary defense theory at trial was that the child pornography was unintentionally and mistakenly downloaded from Lime Wire.

On direct examination, the government asked PVT JH what appellant said to him after PVT JH discovered the video. Private JH answered that appellant commented, "she looks like she's enjoying it." Neither appellant's comment nor the record indicates whether appellant had seen the video before commenting or was seeing it for the first time and commenting. The government also elicited from PVT JH that appellant told PVT JH he downloaded the video from Lime Wire.

On cross-examination, the defense counsel asked PVT JH a series of leading questions, to which PVT JH overwhelmingly answered in the affirmative. Defense counsel elicited that PVT JH believed appellant was not very smart about computers. Defense counsel also established PVT JH held himself out to be knowledgeable about computers. The defense then asked PVT JH if appellant told him "he was

---

[2] The government's expert testified that reason for "piggybacking" is so slower computers can piggyback onto faster computers "to help speed up connections for other users that may not have quite as fast an internet connection."

clicking on random things on Lime Wire?" The government objected on hearsay grounds. Defense counsel argued the statement was admissible pursuant to the "rule of completeness." Defense counsel cited back to PVT JH's testimony referencing appellant's statement that appellant downloaded the files from Lime Wire. The military judge then had a puzzling exchange with defense counsel:

> ADC: [Appellant] told you that he had been clicking random things on Lime Wire?
>
> TC: Objection. Hearsay.
>
> MJ: Sustained.
>
> ADC: Your honor, it's a statement - - -
>
> MJ: Made by whom?
>
> ADC: It's made by the accused in this case under the rule of completeness of the conversation between [appellant] and [PVT JH].
>
> MJ: What's your question - - complete your question.
>
> ADC: [Appellant] told you that he had been clicking random things in Lime Wire.
>
> MJ: In re -- Government?
>
> TC: Your honor, it's hearsay.
>
> MJ: Show me how that goes to the rule of completeness.
>
> ADC: You're honor, we've already - - -
>
> MJ: To the one statement so far at issue. She looks - - looks like she's enjoying it.
>
> ADC: Your honor, the government didn't object a few minutes ago and I accept talking to [PVT JH] about [appellant] said he downloaded these files through Lime Wire.
>
> MJ: But that they didn't object then . . . is that the statement then you're your trying to complain?

ADC:  Yes, your honor.

MJ:  Okay.  Sustained.

There is no evidence that anyone else was present in the room when PVT JH viewed the video and the verbal exchange between appellant and PVT JH took place. No additional evidence regarding the verbal exchange was presented after the military judge sustained the objection.

## LAW AND DISCUSSION

*Did the Military Judge Abuse His Discretion by Refusing
to Allow Defense Counsel to Elicit Evidence from
a Government Witness?*

Appellant argues on appeal the military judge abused his discretion by failing to allow PVT JH to fully testify about the conversation PVT JH had with appellant in the immediate aftermath of the discovery of the video on appellant's computer. We agree.

"We review a military judge's evidentiary rulings for an abuse of discretion." *United States v. Gilbride*, 56 M.J. 428, 430 (C.A.A.F. 2002) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).  "A military judge abuses his or her discretion by making findings of fact that are clearly erroneous or reaching conclusions of law that are incorrect." *Id.*  If we find error, we review the prejudicial effect of that error, to include a determination of whether the error was of a constitutional dimension, de novo.  *See United States v. Toohey*, 63 M.J. 353, 357-358 (C.A.A.F. 2006). "For constitutional errors, the [g]overnment must persuade us that the error was harmless beyond a reasonable doubt." *United States v. Hall*, 56 MJ. 432, 436 (C.A.A.F. 2002) (citing *United States v. Adams*, 44 M.J. 251, 252 (C.A.A.F. 1996)); *Chapman v. California*, 386 U.S. 18, 24 (1967).

The "rule of completeness" exists to ensure "that the court is not misled because portions of a statement are taken out-of-context," and to avoid "the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." *United States v. Rodriguez*, 56 M.J. 336, 339 (C.A.A.F. 2002) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 n.14 (1988)).

Military Rule of Evidence [hereinafter Mil. R. Evid.] 304(h)(2) provides: "If only part of an alleged admission or confession is introduced against the accused,

the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement."[3]  The rule is designed to protect an accused from the prosecution's misleading use of excerpts of an admission or confession, and "permits the defense to introduce the remainder of a statement to the extent that the remaining matter is part of the confession or admission or otherwise is explanatory of or in any way relevant to the confession or admission, even if such remaining portions would otherwise constitute inadmissible hearsay."[4]  *Rodriguez*, 56 M.J at 342.  The rule requires a case-by-case determination as to whether a series of statements should be treated as part of the original confession or admission, or as a separate transaction or course of action for purposes of the rule.  *Id.*

To be overturned on appeal, the military judge's ruling must be "influenced by an erroneous view of the law."  *United States v. Johnson,* 62 M.J. 31, 34 (C.A.A.F. 2005).  In deciding whether an abuse of discretion occurred, *Rodriguez* provided several non-exhaustive factors to consider:

> (1) Has the prosecution attempted to "pick out the incriminating words in the statement or discussion and put them in evidence while at the same time excluding the remainder of the statement or conversation, in which the appellant sought to explain the incriminating passages?"
>
> (2) Is the appellant's subsequent statement separate and unrelated from the subject matter of the original confession, or is it part of or the product of the same transaction or course of action?
>
> (3) What is the elapsed time between the two statements, and were they made at different places and to a different set of persons?
>
> (4) Was the second statement made at the specific request of the appellant or the government?

---

[3] The relevant rule is now Mil. R. Evid. 304(h).  *See* Exec. Order 13,643 78 Fed. Reg. 29,565 (May 21, 2013).  The text of the rule has not changed.

[4] Mil. R. Evid. 304(h)(2) is unique to military practice and has no corresponding rule in the Federal Rules of Evidence.  Both the military and federal rules have a general rule of completeness for written and recorded statements.  *See* Mil. R. Evid. 106. Mil. R. Evid. 304(h)(2) is broader and is not limited to written or recorded statements.

(5) Was the defense invoking the rule of completeness as a matter of fairness, or merely attempting to present evidence of a defense without subjecting the appellant to cross-examination?

(6) Did the appellant engage in a "pattern of deception with a variety of persons, and then argue that belated candor in a different setting justifies the introduction of otherwise inadmissible hearsay"?

*Id.* at 341-43 (citing *United States v. Harve*y, 8 U.S.C.M.A. 538, 546-548, 25 C.M.R. 42, 50-52 (1957)).

In this case, the follow-on statement defense attempted to solicit from PVT JH was part of the same conversation PVT JH had with appellant. The conversation is not separate or unrelated in substance, time or setting. The military judge inaccurately stated one statement so far at issue is "[s]he looks - - looks like she is enjoying it." There is also the statement from PVT JH that appellant told him he downloaded the video from Lime Wire. Defense counsel was trying to complete or give context to the statement regarding the download from Lime Wire.

While the military judge's ruling inherently precludes us from discerning how PVT JH would have answered the question, we are concerned that PVT JH may have provided information that could support appellant's defense theory that the download of the suspected child pornography was unintentional and may have never even been viewed by appellant. Furthermore, given the leading questions and the overwhelmingly affirmative answers from PVT JH, it is apparent from the context in which the questions were asked that PVT JH would likely answer "yes" to the question at issue. *See* Mil. R. Evid. 103(a)(2) (requiring the substance of the offered evidence to be before the military judge in the context of excluding evidence).

The factor weighing in favor of exclusion of the statement is that the appellant would have been able to present evidence of his defense without subjecting himself to cross-examination. Although that is accurate, the complete statement by appellant may have provided a greater explanation about whether appellant intentionally downloaded the video than the incomplete statement offered and admitted by the government. This factor weighs in favor of admission of the statement. The government offered part of the statement in the first instance, prompting the defense to seek fairness through completion.

The rule of completeness exists to address the very situation that unfolded at trial. "The rule of completeness is neither a sword which the accused might introduce evidence to avoid the crucible of cross-examination, nor a shield behind

7

which the true nature of an accused's admissions may be hidden." *United States v. Foisey*, 69 M.J. 562, 567 (N.M. Ct. Crim. App. 2010). We find it was error for the military judge to sustain government's objection. To the extent the exchange between the military judge and defense counsel was confusing, the military judge should have clarified the offer of proof. Because of the ruling, appellant may have been precluded from providing evidence in his defense.

If a military judge errs by excluding evidence, we next determine whether the error materially prejudiced the substantial rights of the accused. *Johnson*, 62 M.J. at 35; UMCJ art. 59(a). Because the ruling purportedly deprived the appellant of the opportunity and right to provide evidence in his defense, under these facts, we view the error as one of constitutional dimension. *See United States v. Garcia*, 44 M.J. 27, 32 (1996). In *United Stated v. Benton*, 57 M.J. 24 (C.A.A.F. 2002), our superior court upheld this court's decision that the trial judge erred in excluding follow-on exculpatory testimony pursuant to the rule of completeness, but found the error harmless because appellant suffered no material prejudice. This case is distinguishable in that Benton was not deprived of his constitutional right of presenting a defense because he was allowed to present his defense through other evidence. Here, appellant did not take the stand. Appellant's only available means to get this evidence before the fact finder without personally testifying was through cross-examination of PVT JH. Put another way, this evidence was "material" and "vital" to appellant's defense. *See Hall*, 56 M.J. at 437 ("A ruling excluding evidence is not constitutional error unless the evidence is 'material or vital.'") (quoting *United States v. Ndanyi*, 45 M.J. 315, 321-22 (C.A.A.F. 1996)); *see also Garcia*, 44 M.J. at 31.

For constitutional errors, the government must persuade us that the error was harmless beyond a reasonable doubt. *Hall*, 56 M.J. at 436. In our view, the admissible evidence in the government's case was not so overwhelming to make this error harmless beyond a reasonable doubt. "The test for determining if the constitutional error is harmless is 'whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. MacDonald*, 72 M.J. 426, 434 (C.A.A.F. 2014) (quoting *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002); *Chapman v. California*, 386 U.S. 18, 24 (1967)). The defense's theory is plausible and supported by some evidence. The materiality of the excluded statement is central to the defense theory of appellant unintentionally downloading the child pornography videos. The ruling allowed the prosecution to present an incomplete account of appellant's statements. Depending on the information solicited, the military judge could have concluded appellant unintentionally downloaded the material.

We have examined the impact of this error on all three video files of child pornography. Appellant made the incomplete statement at issue after PVT JH confronted him in September 2010. The statement at issue was vital to appellant's

8

defense that he unintentionally downloaded the video and was made immediately after PVT JH discovered the video. In our view, omission of that evidence may have contributed to the verdict relating to that video.

A different, closer question is whether the omission of the evidence might have contributed to the verdict relating to the two Frost Wire files of child pornography downloaded in November 2010. These files were downloaded several months after PVT JH witnessed the child pornography and told appellant to delete it, raising an inference that appellant knowingly downloaded the second batch of child pornography. Furthermore, the file names of the other Frost Wire files raise an inference of appellant's intent and lack of mistake. The evidence, however, still reveals that appellant was not very smart about computers. The fact finder should have been able to weigh those potentially inculpatory inferences against the potentially exculpatory complete statement. Ultimately we are not convinced beyond a reasonable doubt that the error did not contribute to the verdict extending to the November 2010 Frost Wire files, as well as the file viewed by PVT JH. Accordingly, we will set aside the finding of guilty for possessing child pornography.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are set aside. A rehearing is authorized. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings and sentence, hereby set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9