**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class SERGIO ROSALES**
**United States Air Force**

**ACM 38502**

**17 June 2015**

**____ M.J. ____**

Sentence adjudged 20 September 2013 by GCM convened at Hill Air Force Base, Utah.  Military Judge:  Donald R. Eller, Jr.

Approved Sentence:  Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant:  Major Christopher D. James.

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Roberto Ramírez; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and SANTORO
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of attempted rape, two specifications of assault consummated by a battery, and one specification of communicating a threat, in violation of Articles 80, 128, and 134, UCMJ, 10 U.S.C. §§ 880, 928, 934.  The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1.

The appellant argues that (1) the military judge abused his discretion in excluding portions of the appellant's recorded statement to investigators, (2) trial defense counsel were ineffective, and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the evidence is legally and factually insufficient to sustain his convictions.[1]

*Background*

The charges stem from three separate incidents in what appears to have been a tumultuous marriage. Two separate altercations resulted in the two assault convictions.[2] In the first incident, the appellant became angry at his wife after an argument about cleaning a dinner plate. He put his hands around her throat and pushed her into the kitchen wall. In the second incident, the appellant twice pushed his wife onto a couch because he wanted to speak with her. When she threatened to call his first sergeant, he grabbed a knife, pushed the knife into her hand, and closed his hand around hers. It was during this incident that he threatened her, saying that if she wanted to ruin his life, he could ruin hers as well. He said that because her fingerprints were now on the knife, he could make it look as if she had slit his throat and she would end up in jail.

In the final incident, after the appellant and his wife attended his 21st birthday party, he returned home while his wife went to another party (hereafter the "afterparty"). At the afterparty, his wife engaged in passionate kissing with another man and disappeared with him into the bathroom for a considerable time. Other members of the appellant's squadron were at the afterparty and saw his wife engaging in this activity.

When his wife returned home several hours later and was in the bathroom preparing for bed, the appellant put his arms around her using so much force that she fell to the floor. The appellant kissed her neck and face while she protested and tried to get to the door. He closed and locked the door, pushed her back to the floor, and pinned her wrists to the side of her head. Over her screams, he tried to pull her clothing off and removed his own. As he tried to penetrate her, she kicked him at the site of a surgical scar on his stomach, causing him to recoil and giving her the opportunity to escape.

Concerned about his mental health, the appellant's wife called his first sergeant. An investigation ensued during which the appellant gave a recorded interview to the Air Force Office of Special Investigations. During the interview, he admitted much of

---

[1] An additional assignment of error, that the record of trial was not substantially complete because the DVD containing the appellant's statement to investigators could not be played, was rendered moot when we granted the government's motion to substitute a duplicate, viewable DVD. After receiving the operable DVD, the appellant did not submit any supplemental assignments of error.

[2] The appellant was initially charged in one specification with assault with a means likely to produce great bodily harm, but the members convicted him instead of the lesser included offense of assault consummated by a battery.

the substance of the offenses and talked about, among other things, the rumors he had heard about his wife's conduct at the afterparty.

*Exclusion of Evidence*

When the government introduced portions of the appellant's recorded confession, the appellant sought to admit the remainder pursuant to Mil. R. Evid. 304(h) (the "rule of completeness"). The government objected, citing Mil. R. Evid. 412 (the "rape shield" rule). The military judge excluded the contested segments of the interview.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. Gilbride*, 56 M.J. 428, 430 (C.A.A.F. 2002); *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011).

Military Rule of Evidence 304(h) provides:

> If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement.

This rule is designed "to protect an accused from the prosecution's misleading use of excerpts of an admission or confession." *United States v. Rodriguez*, 56 M.J. 336, 342 (C.A.A.F. 2002). Rule 304(h) requires admission of the "remaining portions of the statement" if such material falls within the criteria set forth under the rule and applicable case law.

However, Mil. R. Evid. 412 provides that evidence that the alleged victim engaged in other sexual behavior is generally inadmissible. The exception to this prohibition that is relevant to this case allows the admission of "evidence the exclusion of which would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C).

The appellant told investigators of rumors about his wife's conduct at the afterparty. The defense theory of relevance was two-fold: the victim had a motive to fabricate the attempted rape to draw attention away from her own conduct, and investigators tricked him into falsely confessing by talking to him about his wife's behavior.

There are four distinct segments of the interview in issue. In the first segment, the appellant told investigators that he heard his wife "slept with" the man. In the second segment, he told investigators that he was not sure what to think of the attempted rape

allegation in light of the "new case of her having an affair."[3] In the third segment, he told investigators he heard his wife "hooked up" at the afterparty and when he later confronted her, she initially denied, then admitted something happened in the bathroom but said that the details were none of his business. In the fourth segment, he spoke generally about what he had heard of the incident and who else may have been aware. Although the appellant, government trial counsel, trial defense counsel, and the military judge frequently used the term "affair" to describe the conduct in issue, the appellant's statements all reference the incident that occurred at the afterparty.

With respect to the theory that the wife's statements supported a motive to fabricate, the military judge found that evidence of her conduct with another man hours before the attempted rape was relevant and constitutionally required to be admitted. *See United States v. Sanchez*, 40 M.J. 782, 785 (A.F.C.M.R. 1994), *aff'd* 44 M.J. 174 (C.A.A.F. 1996) (explaining that a motive to lie for revenge or to shift blame is a motive that is "commonly understood and obvious"). With respect to the theory that the statements supported a false confession claim, the military judge found that the appellant's statements did not support his argument that his confession was coerced and were therefore not relevant on that point.

Based on these conclusions of law, the military judge required the defense to introduce the constitutionally-required evidence through cross-examination of the victim. He prohibited introduction of the relevant portions of the recorded interview, concluding that Mil. R. Evid. 412 barred admission of these segments of the recording because they were not constitutionally required, notwithstanding Mil. R. Evid. 304(h).

There is an inherent tension in the military judge's ruling with respect to the evidence of the victim's alleged motive to fabricate. On the one hand, he found that this evidence was constitutionally required. On the other hand, he precluded the court members from hearing about it from the accused's perspective during his interrogation. The military judge's ruling suggests that, although he found the evidence constitutionally required, he believed he retained the discretion to control the method of introduction of evidence. *See* Mil. R. Evid. 611 ("The military judge should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."). Furthermore, he wanted to exclude unreliable hearsay evidence contained within the appellant's statement. *See* Mil. R. Evid. 801; *see also* Mil. R. Evid. 403 (allowing the military judge to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence).

---

[3] This section of the recording also includes discussion about prior assaults not in any way connected to this case; the defense did not argue that these comments should be admitted.

Using that discretion, he directed the defense to bring out the evidence of the wife's conduct at the afterparty through cross-examination.

The appellant does not directly challenge the military judge's determination that this same evidence was inadmissible to support a false confession theory.[4] Rather, he argues the military judge erred in not admitting the entirety of the interview pursuant to Mil. R. Evid. 304(h).

Trial judges have a natural—and understandable—instinct to exclude unreliable hearsay evidence. Frequently, the unreliability of uncorroborated hearsay statements will be sufficient for a military judge to determine their substance is not constitutionally required to be admitted under Rule 412(b)(1)(C). However, in this case, we have two additional factors in the analysis: first, the victim herself admitted engaging in passionate kissing with another man, significantly diminishing the reliability concern; second, the appellant sought admission under Rule 304(h).

Had the hearsay statements at issue regarding the wife's conduct at the afterparty been offered through a source other than the appellant's confession, we would have no difficulty concluding that the military judge acted within his discretion in directing that this evidence come in through cross-examination of the victim. The military judge's ruling did not limit the appellant's opportunity to confront, cross-examine, nor present a defense. He simply placed constitutionally-permissible restrictions on the manner in which the evidence would be received. *See United States v. Sousa*, 72 M.J. 643, 649 (A.F. Ct. Crim. App. 2013).

But does the existence of Rule 304(h) change that analysis? Or, put differently, does a military judge have the discretion to exclude relevant portions of an accused's confession either because they contain otherwise-inadmissible hearsay or because their substance is introduced through another witness? To answer that question we must look at the history and purpose of Mil. R. Evid. 304(h).[5]

There are two "rules of completeness" in the military justice system: Mil. R. Evid. 106 and Mil. R. Evid. 304(h). While Rule 304(h) applies only to admissions or confessions by an accused, Rule 106 applies more broadly:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at

---

[4] The military judge's findings of fact on this point are amply supported by the record and not clearly erroneous. We concur with his application of Mil. R. Evid. 412 in this respect.

[5] Prior to the issuance of Executive Order 13643 on May 15, 2013, this provision was contained in Mil. R. Evid. 304(h)(2). Executive Order No. 13643, 78 Fed. Reg. 29, 561 (May 21, 2013). As no substantive changes were made to this provision in that Executive Order, the history and purpose of Mil. R. Evid. 304(h)(2) is wholly applicable to an analysis of Mil. R. Evid. 304(h).

that time, of any other part— or any other writing or recorded statement—that in fairness ought to be considered at the same time.

The drafters' analysis of Rule 304(h)(2), the identical predecessor to current Rule 304(h), explains why a second rule was created:

> Although Rule 106 allows a party to require an adverse party to complete an otherwise incomplete written statement in an appropriate case, Rule 304(h)(2) allows the defense to complete an incomplete statement regardless of whether the statement is oral or in writing. As Rule 304(h)(2) does not by its terms deal only with oral statements, it provides the defense in this area with the option of using Rule 106 or 304(h)(2) to complete a written statement.

*Manual for Courts-Martial, United States*, *Analysis of the Military Rules of Evidence*, A22-13 (2012 ed.).

Thus, it appears that the intent of the rule of completeness within Rule 304 was to broaden the application of Rule 106's underlying rationale to oral statements. Another distinction between the two rules is that Rule 106 allows the admission of any other statement which ought "in fairness" to be considered with the offered statement regardless of when it was made. Conversely, Rule 304(h) allows admission of "remaining portions of *the statement*." (Emphasis added).[6]

Rule 106 does not allow for the admission of "any other part" of the statement without limit. Rather, those additional portions of the statement must still meet the Mil. R. Evid. 401 relevance standard, *see, e.g.*, *United States v. Cannon*, 33 M.J. 376, 383 (C.M.A. 1991); *accord United States v. Garrett*, 716 F.2d 257, 272 (5th Cir. 1983); *United States v. Marin*, 669 F.2d 73, 84–85 (2d Cir. 1982), and be required "in fairness," suggesting that Mil. R. Evid. 403 could still bar statements that are not reliable and unnecessary to place the statement in proper context. *See United States v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983) (noting that Federal Rule of Evidence 106 does not render inadmissible evidence admissible).

---

[6] In applying Mil. R. Evid. 304(h)'s identical predecessor, military courts have grappled with whether arguably different statements may properly be admitted under this rule. *See, e.g.*, *United States v. Gilbride*, 56 M.J. 428 (C.A.A.F. 2002) (concluding that a written statement completed immediately after oral statement was admissible under Rule 304(h)(2)); *United States v. Harvey*, 8 U.S.C.M.A. 538, 546 (C.M.A. 1957) (finding that a statement made nine days later was inadmissible under Rule 304(h)(2)). There is no dispute that the statements in issue in this case were part of the same admission or confession.

After reviewing the history of Rules 106 and 304(h)(2), our superior court held that Rule 304's completeness requirement "permits the defense to introduce the remainder of a statement to the extent that the remaining matter is part of the confession or admission or otherwise is explanatory of or in any way relevant to the confession or admission, even if such remaining portions would otherwise constitute inadmissible hearsay." *Rodriguez*, 56 M.J. at 342. Significantly, our superior court has also held that Rule 106's "fairness" considerations do not apply to admissibility under the provisions of Rule 304(h): the rule "*requires* admission of the 'remaining portions of the statement' if such material falls within the criteria set forth under the rule and applicable case law." *Id.* (emphasis added).

Because the military judge determined that evidence of the victim's behavior on the night of the attempted rape was relevant and constitutionally required to be admitted pursuant to Mil. R. Evid. 412, after applying the principles above, we conclude the military judge erred in excluding the appellant's recorded statement on hearsay grounds. We further conclude that application of Rule 304(h) removed his discretion to require that the evidence be admitted only through cross-examination of the victim.[7]

As noted above, because the appellant's wife was cross-examined and admitted engaging in the relevant behavior, the appellant was not precluded from confronting, cross-examining, and presenting a defense. We therefore treat this as a non-constitutional error and test for prejudice. We review de novo whether a non-constitutional error had a substantial influence on the verdict in the context of the entire case. *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007).

We conclude that the error did not have a substantial influence on the verdict. The members heard from the victim herself that she engaged in a romantic encounter at the afterparty. None of the excluded statements shed any additional light on what occurred that night. Trial defense counsel had the evidence from which they could—and did—argue that the victim had a motive to fabricate. Moreover, the appellant's admissions to the conduct at issue were compelling proof of his guilt.

---

[7] We are unable to locate any cases discussing the relationship between Rules 403 and 304(h). The relevance requirement discussed in *United States v. Rodriguez*, 56 M.J. 336 (C.A.A.F. 2002), does not answer this question, as Rule 403 only applies to evidence that has already been deemed relevant. While some aspects of Rule 403, such as prejudice, may be inapplicable in the Rule 304(h) context, we do not believe that Rule 304(h) was intended completely to trump all other rules of evidence. Its very terms, and our superior court's decision in *Rodriguez*, establish a threshold requirement that the remainder of the statement be relevant. The application of Rule 403 to such a situation, however, is an unanswered question. Taking an extreme example, if one accused of sexual assault, while confessing, read aloud for hours a treatise about false reporting of sex crimes, we would be hard-pressed to require the admission of his read aloud despite the fact that false reporting of sexual assaults is logically relevant to the subject of his confession. Nevertheless, we need not resolve that question to decide this case.

*Ineffective Assistance of Counsel*

The appellant alleges that his counsel were ineffective because they behaved unprofessionally, failed to obtain potential mitigating evidence, failed to preserve evidence, failed to obtain the service of a forensic psychologist, failed to advise him of a prior professional relationship between his defense counsel and the senior prosecutor, failed to properly cross-examine the victim, and failed to inform the military judge that the members of the court-martial were falling asleep.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474). Evidentiary hearings are required if there is any dispute regarding material facts in competing declarations submitted on appeal which cannot be resolved by the record of trial and appellate filings. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

The deficiency prong requires the appellant to show his counsel's performance fell below an objective standard of reasonableness according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In doing so, the appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229).

The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, (1955)). We will not second-guess a trial defense counsel's strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987).

We ordered trial defense counsel to submit affidavits responsive to the appellant's allegations. Although defense counsel's recollections of several issues differed from the appellant's, we are able to resolve this issue without ordering additional fact-finding. We find trial defense counsel acted professionally and further find that there were valid bases within the record and the appellate filings for defense counsel's tactical decisions—especially in the context of a case in which the appellant admitted engaging in the charged conduct and the victim testified consistently and credibly. The comprehensive declarations by trial defense counsel address the alleged deficiencies and provide sound reasons for the decisions now questioned by the appellant.

Therefore, in assessing the appellant's allegation of ineffective assistance of counsel, we find the appellant failed to establish his counsel were deficient such that their performance fell below an objective standard of reasonableness according to the prevailing standards of the profession. Because we find trial defense counsel were not deficient, we need not address the prejudice prong of *Strickland*. However, even were their performance deficient, the appellant has failed to establish prejudice or a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

*Legal and Factual Sufficiency*

The appellant argues, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that the evidence is legally and factually insufficient to support each of the charges and specifications.

We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

With respect to the conviction for attempted rape, the appellant argues that the evidence is insufficient because his wife fabricated the event to conceal her romantic relationship with another man. With respect to his assault convictions, he argues that his conduct resulted from subconscious reactions or his attempts to defend himself. Finally, with respect to his conviction for communicating a threat, he again claims self-defense.

We have reviewed the entire record of trial, paying particular attention to the matters raised by the appellant. Nevertheless, applying the appropriate legal standards to the evidence and making allowances for not having observed the witnesses, we find the evidence legally and factually sufficient to prove the appellant's guilt of each charge and specification beyond a reasonable doubt, and we are ourselves convinced of his guilt.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are

**AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court