# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2025-14**

———————————

**In re LB**
*Petitioner*

**Irvin BRYANT, JR.**
Technical Sergeant (E-6), U.S. Air Force
*Real Party in Interest*

———————————

Petition for Extraordinary Relief in the Nature of a Writ of Mandamus

Decided 19 March 2026

———————————

*Military Judge*: Lauren M.D. Torczynski.

*GCM convened at*: Joint Base Anacostia-Bolling, Washington, D.C.

*For Petitioner*: Captain Alicia M. Ferguson, USAF; Devon A. R. Wells, Esquire.

*For Real Party in Interest*: Major Heather M. Bruha, USAF; Major Eric Trudrung, USAF; Captain John M. Fredericks, USAF; Dwight H. Sullivan, Esquire.

*For United States*: Colonel G. Matt Osborn, USAF; Colonel Matthew D. Talcott, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and PERCLE *Appellate Military Judges*.

Judge PERCLE delivered the opinion of the court, in which Chief Judge JOHNSON and Judge KEARLEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

PERCLE, Judge:

On 16 December 2025, pursuant to Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, Petitioner submitted to this court a petition for extraordinary relief in the nature of a writ of mandamus and a motion to stay proceedings, accompanied by a motion to file portions of the petition under seal in the pending general court-martial of *United States v. Technical Sergeant Irvin Bryant, Jr.* Technical Sergeant Bryant, the Real Party in Interest (RPI), is charged with two specifications of sexual assault (Specifications 1 and 2 of Charge I) in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920; three specifications of domestic violence (Specifications 1–3 of Charge II) in violation of Article 128b, UCMJ, 10 U.S.C. § 928b; and one additional specification of sexual assault (Specification of the Additional Charge), in violation of Article 120, Uniform Code of Military Justice (UCMJ).[1,2] Petitioner, LB, is the named victim in all charges and specifications.

Petitioner filed her petition on 16 December 2025 during the "ongoing" court-martial, and we docketed it with the court this same date. Petitioner requested we stay the "ongoing" proceedings and issue a writ to: (1) vacate the military judge's ruling of 12 December 2025 regarding the admissibility of evidence under Mil. R. Evid. 412; (2) vacate the military judge's ruling of 9 December 2025 that LB lacked standing to move for a "protective order to limit disclosure and dissemination of her private PHI;" and (3) vacate the military judge's ruling of 12 December 2025 finding Petitioner's "private and Protected Health Information [(PHI)] was in the possession, custody, and control of military authorities and that such PHI was relevant."[3] Petitioner also requested to file portions of her writ under seal.

---

[1] The punitive articles are to the *Manual for Courts-Martial, United States* (2019 ed.) Unless otherwise noted, all other references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*).

[2] All charges and specifications were preferred on 6 May 2025, except for the additional specification of sexual assault, in violation of Article 120, UCMJ, which was later preferred on 9 July 2025. All charges and specifications were referred to general court-martial on 9 July 2025.

[3] In Petitioner's original filing, issues (2) and (3) were listed in reverse of their supplemental filing. For consistency, we have numbered the issues as briefed in Petitioner's 7 January 2026 filing.

On 17 December 2025, we issued an order denying Petitioner's request to stay proceedings,[4] granting the request to file under seal, and allowing Petitioner to file a supplemental brief on the writ not later than 7 January 2026. On this same day, Petitioner filed anew a "Motion for Leave to Supplement Pleading and Attach to the Record," moving this court for leave to file an attachment to her 16 December 2025 petition. The attachment was an email from the military judge, dated 17 December 2025, continuing the "ongoing" court-martial to a "later date to be determined."[5] On 18 December 2025 this court granted Petitioner's "Motion for Leave to Supplement Pleading and Attach the Record."

On 7 January 2026, Petitioner filed her supplemental brief and requested to file portions of her supplemental brief under seal. On 13 January 2026, this court granted Petitioner's motion to file under seal, and gave the United States and the RPI leave to file an answer to issues (1) relating to the military judge's Mil. R. Evid. 412 ruling and (2) relating to Petitioner's standing to request a protective order, raised by Petitioner described *supra*, not later than 9 February 2026. Counsel on behalf of the RPI filed an answer on 6 February 2026 and requested to file portions of their answer under seal. The United States filed an answer on 9 February 2026, and requested to file portions of its answer under seal. We granted both the RPI's and United States' motions to file under seal. The RPI also filed, and we granted, a consent motion (joined by the United States) to attach additional documents to the record. Petitioner filed a timely reply brief on 17 February 2026. We have reviewed all filings by the parties. We find issuance of a writ is not appropriate.

## I. BACKGROUND

The RPI is alleged to have committed the charged offenses between on or about 1 June 2020 and on or about 24 October 2023. During the charged timeframe, the RPI was Petitioner's spouse.

---

[4] *See, e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("[F]actors regulating the issuance of a stay" are generally . . . (1) whether [a petitioner] has made a strong showing that he is likely to succeed on the merits; (2) whether [a petitioner] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (citations omitted)).

[5] As of the date of this opinion, we have no reason to believe the RPI's court-martial has concluded and therefore, unless otherwise stated, this writ has not been rendered moot.

Petitioner brings this petition under Article 6b(a)(9), UCMJ, 10 U.S.C. § 806(a)(9), because the military judge's ruling "will subject [Petitioner] to public humiliation and degradation, violating her right to be treated with fairness and with respect for her privacy and dignity." In her supplemental brief, Petitioner requested we stay the "ongoing" proceedings and issue a writ to: (1) vacate the military judge's ruling regarding the admissibility of evidence under Mil. R. Evid. 412 because "the military judge refused to accord and acknowledge [Petitioner's] rights, ruling certain evidence admissible despite [Mil. R. Evid.] 412 and in doing so used a clearly and indisputably incorrect legal standard;" (2) vacate the military judge's ruling that Petitioner lacked standing to "seek a protective order from the court-martial over her private PHI [(Protected Health Information)] because the injury to [Petitioner's] privacy interests can be redressed by the military judge;" and (3) vacate the military judge's ruling finding Petitioner's "private and [PHI] was in the possession, custody, and control of military authorities and that such PHI was relevant," because Petitioner claims the "Defense Health Agency is not a military authority as contemplated in [Rule for Courts-Martial] 701." The petition, responsive briefs, and reply brief, with attachments, establish the following facts and sequence of events necessary to resolve each issue which are contained below.[6]

## II. DISCUSSION

### A. Defense Motion to Admit Evidence under Mil. R. Evid. 412

#### 1. Additional Background

##### *a. Filings*

On 8 September 2025, trial defense counsel for the RPI gave proper notice pursuant to Mil. R. Evid. 412 that they intended to seek admission of certain evidence potentially subject to the Rule and supplemented that notice with a filing on 15 September 2025. In pertinent part, the Defense indicated they were seeking admission of both general patterns and specific instances of the sexual history between Petitioner and the RPI which pre-dated and post-dated the charged offenses.

In support of their request for the military judge to admit this evidence at trial, the Defense requested Petitioner testify under oath at a closed hearing

---

[6] Due to the nature of the raised issues, many of the attachments to the parties' filings, as well as portions of the briefs, were filed under seal. In this opinion, we reference certain intimate details with minimum specificity, not only due to Petitioner's rights to privacy, dignity, and respect, but also because of the pre-trial stage of proceedings.

and in addition to presenting the testimony attached various documents to factually support their motion. Over the Government's and Petitioner's objection, the military judge compelled Petitioner to testify at the pretrial hearing. After the hearing, trial defense counsel for the RPI filed two supplemental motions to admit additional evidence subject to the restrictions of Mil. R. Evid. 412.

In support of their motions to overcome the presumed exclusion of this evidence, the Defense cited, *inter alia*, the Fifth and Sixth Amendments of the Constitution;[7] *United States v. Gaddis*, 70 M.J. 248 (C.A.A.F. 2011) (where our superior court found the Mil. R. Evid. 403 balancing test was not unconstitutional under Mil. R. Evid. 412(b)(3) and that victim's privacy interests cannot preclude admission of such evidence); *United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011) (where our superior court further explained what relevance and materiality was under Mil. R. Evid. 412(b)(3)); *United States v. Moss*, 63 M.J. 233, 237 (C.A.A.F. 2006) (addressing Mil. R. Evid. 412 evidence and cross-examination); and Mil. R. Evid. 412(b)(2) and (b)(3). The Defense broke down each category of requested evidence, and listed various reasons for admission under the Rule for each category requested, ranging from alleging this was evidence relevant to prove consent by Petitioner to the charged conduct or that the RPI held an honest and reasonable mistake of fact as to Petitioner's consent for the charged conduct, as well as the constitutional right of Appellant to confront his accuser and undermine her credibility.

On 5 September 2025, the Government gave timely notice of its intent to seek to admit evidence under Mil. R. Evid. 412, later filing on 15 September 2025 a request to admit evidence of the general sexual history of the RPI and Petitioner as admissible under Mil. R. Evid. 412(b)(2). Petitioner, through her victims' counsel, did not oppose the Government's request to admit this evidence, but asked the scope of the inquiry on specific instances of sexual behavior with the accused be limited to what is "minimally necessary."

On 25 September 2025, the Government responded to the first defense motion to admit evidence under Mil. R. Evid. 412. The Government objected to some, but not all of the defense-requested evidence. Relevant objections are detailed below as they relate to this petition.

On 26 September 2025, Petitioner, through her victims' counsel, opposed the disclosure of the RPI's requested information averring the Defense had not met its burden of demonstrating "any of the exceptions to [Mil. R. Evid. 412] apply to this case."

---

[7] U.S. CONST. amend. V, VI.

On 6 October 2025, the military judge held a closed Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing to take evidence and argument on the 15 September 2025 defense motion to admit Mil. R. Evid. 412 evidence.

After Petitioner's sworn testimony at the closed Article 39(a), UCMJ, hearing, the Defense, on 6 November 2025, filed its second motion to admit evidence subject to Mil. R. Evid. 412. This second motion sought to admit specific text messages between Petitioner and the RPI that are sexual in nature but not directly related to the charged conduct. The Defense sought to admit these messages under Mil. R. Evid. 412(b)(2) and (b)(3) as evidence of consent to the charged conduct, and evidence raising the defense of mistake of fact as to consent and arguing the messages were constitutionally required for cross-examination and impeachment of Petitioner. The Government objected to the evidence requested in the second motion to admit under Mil. R. Evid. 412. Petitioner also objected "because the text messages do not fall under any of the enumerated exceptions and do not contradict [Petitioner's] testimony. Admission of the text messages is not constitutionally required."

On 18 November 2025, the Defense filed its third motion seeking to admit evidence subject to Mil. R. Evid. 412, relating to specific instances of consensual sexual encounters and an alleged pattern of behavior during the relationship between Petitioner and the RPI. The Defense averred "evidence is admissible under Mil. R. Evid. 412(b)(2) and b(3) as related to the Additional Charge." The Government and Petitioner opposed admission of the evidence in this third defense filing. Petitioner stated that the military judge should deny this request because "the evidence does not fall under any of the enumerated exceptions."

### b. Rulings

On 29 October 2025, the military judge issued a ruling granting the Government's request to admit evidence under Mil. R. Evid. 412 with some restrictions on the scope of the specific instances of sexual conduct information. On 12 December 2025, the military judge ruled on all three defense requests to admit Mil R. Evid. 412, granting in part and denying in part as discussed below.

The military judge's findings of fact relating to the defense motion included a summary of Petitioner's testimony at the closed Article 39(a), UCMJ, hearing on 6 October 2025 related to the contested Mil. R. Evid. 412 evidence, as well as findings of fact adduced from motion attachments.

The military judge ruled that several of the requested instances of Mil R. Evid. 412 evidence met enumerated exceptions and therefore were admissible under the Rule. As to those the military judge allowed, Petitioner outlined the categories of evidence in her brief as (a)–(h), and we address them accordingly.

Regarding category (a) in Petitioner's brief, the military judge found, over Petitioner's objection,[8] that evidence of the consensual sexual history of the same charged sexual act in Specification 1 of Charge I between the RPI and Petitioner, both before and after the charged time, was admissible. The military judge found the Defense had asserted enough of a factual predicate this evidence existed, saying in her ruling this category of evidence was "supported by [Petitioner's closed hearing] testimony." Specifically, the military judge found that there was some evidence Petitioner and the RPI had engaged in this consensual sexual act prior to the charged event, and "though [Petitioner] testified that she did not recall whether she and the [RPI] engaged in consensual [sexual acts after the charged time frame,] . . . [she] did not deny that they had done so." Given this factual predicate, the military judge found this evidence was admissible "under [Mil. R. Evid.] 412(b)(2)" because Petitioner's testimony on the issue is "relevant as context to the ongoing relationship" between the RPI and Petitioner. In addition to finding this evidence admissible under Mil. R. Evid. 412(b)(2), the military judge listed several reasons why it was relevant and material to the Defense and therefore also admissible under Mil. R. Evid. 412(b)(3). The military judge also briefly addressed the balancing test under Mil. R. Evid. 403.

Regarding category (b) in Petitioner's brief, the military judge found, over Petitioner's objection,[9] that evidence related to the consensual sexual history both before and after the charged time between the RPI and Petitioner of acts similar to the specific charged sexual act in the Specification of the Additional Charge, was admissible because the Defense had asserted enough of a factual predicate as "supported by [Petitioner's] testimony." The military judge concluded, *inter alia*, this evidence was admissible "under [Mil. R. Evid.] 412 (b)(2)," because it "provide[s] context to the relationship between [Petitioner] and [the RPI] and is relevant to the issue of consent." In addition to finding this evidence admissible under Mil. R. Evid. 412(b)(2), the military judge listed several reasons why it was relevant and material to the Defense and therefore also admissible under Mil. R. Evid. 412(b)(3). The military judge also briefly addressed the balancing test under Mil. R. Evid. 403.

---

[8] The Government did not object to this request to admit evidence. The military judge highlighted the Government's request for substantially similar evidence to be admitted in her ruling.

[9] The Government did object to the admission of this evidence by stating the requested evidence was not relevant because "it describes [Petitioner's] sexual behavior and predisposition unrelated to the charged offenses." The Government further argued that any marginal relevance of the evidence was outweighed by the danger of "unfair prejudice, harassment and confusion of the issues" and should therefore be excluded.

Regarding category (c) in Petitioner's brief, the military judge found, over Petitioner's objection,[10] that evidence related to the frequency of Petitioner's requests for consensual sex with the RPI and the RPI's denial of some of Petitioner's requests was not supported by Petitioner's testimony, but that "the Defense presented evidence that the [RPI] gave a statement to Air Force investigators which supports this evidence." The military judge concluded then that given the necessary factual predicate existed, this evidence "is relevant to provide context of the relationship," as well as the issue of consent or mistake of fact as to consent, and concluded it was also admissible under Mil R. Evid. 412(b)(2) and (b)(3). The military judge also briefly addressed the balancing test under Mil. R. Evid. 403.

Regarding categories (d) and (h) in Petitioner's brief, the military judge found, over Petitioner's objection, that evidence related to specific sexual conversations between the RPI and Petitioner was supported by Petitioner's testimony and, for example, "relevant to the context of the relationship" between the RPI and Petitioner and "therefore admissible under [Mil. R. Evid.] 412(b)(2)." The military judge also stated that the evidence was relevant, material, and "favorable to the Defense" and listed reasons why it was admissible under Mil. R. Evid. 412(b)(3). The military judge also briefly addressed the balancing test under Mil. R. Evid. 403.

Regarding categories (e)–(g) in Petitioner's brief, the military judge found, over Petitioner's objection, that evidence related to specific sexual photographs sent between the RPI and Petitioner were "relevant to show [Petitioner's] sexual interest in" or "sexual dynamic with" the RPI and were "relevant, material and favorable to the Defense as context for a potential mistake of fact defense under [Mil. R. Evid.] 412(b)(3)." The military judge also briefly addressed the balancing test under Mil. R. Evid. 403.

There was one particular set of photos that the military judge also ruled admissible under Mil. R. Evid. 412(b)(2) given the timing of the photographs and relation to the "continuing sexual interest between [Petitioner and the RPI]." Another set of photographs were also ruled admissible under Mil. R. Evid. 412(b)(2) due to its depiction of "strikingly similar" consensual circumstances like that of the offense charged in the Additional Charge.

---

[10] The Government did object to the admission of this evidence, by stating the requested evidence was not relevant because "it is quintessential evidence of sexual predisposition barred [Mil. R. Evid. 412]" and "puts [Petitioner's] general sexual character on trial." The Government further argued that any marginal relevance was outweighed by the "substantial" prejudice of its admission.

Despite ruling the above evidence admissible under Mil. R. Evid. 412, the military judge also found several instances of evidence the Defense requested were not admissible because the factual predicate was "not supported by the evidence" before her.

**2. Law**

### *a. Article 6b, UCMJ*

Article 6b(b), UCMJ, 10 U.S.C. § 806b, defines "victim of an offense under this chapter" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under [the UCMJ]."

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the Court of Criminal Appeals [(CCA)] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). A writ of mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)).

The Uniform Code of Military Justice affords certain rights to victims of offenses, including to be treated with "fairness and with respect for [their] dignity and privacy." Article 6b(a)(9), UCMJ. While victims "do not have the authority to challenge every ruling by a military judge with which they disagree[,] . . . [they] may assert [certain] rights enumerated in Article 6b, UCMJ, in the *Manual for Courts-Martial*, and under other applicable laws." *In re KK*, 84 M.J. 664, 667 (A.F. Ct. Crim. App. 2023).

This court has wrestled with what is encompassed in the definition of fairness under Article 6b, UCMJ.

> There is little military precedent regarding the "with fairness" provision found in Article 6b, UCMJ, with one court finding that the provision does not entitle victims to a right to receive discovery (at least "without an analysis of the case status and pending

legal issue").[11] With respect to the [Crime Victims' Rights Act (CVRA)], federal courts have found victims' fairness rights implicated by such matters as delays in ruling on victim's motions;[12] venue choice;[13] court decisions to dismiss indictments;[14] and preventing court observers from seeing sexually explicit videos of victims.[15] If decisions on venue choice and the dismissal of charges impact a victim's right to be treated with fairness, then there seems to be little argument that court rulings which impact the nature and quality of a victim's legal representation similarly impact that right. This is especially true in light of the fact Congress has required the military services to provide legal counsel to victims of sex-related offenses.[16]

*In re KK*, 84 M.J. 664, 670 (A.F. Ct. Crim. App. 2023).

Article 6b(e)(4), UCMJ, 10 U.S.C. § 806b(e)(4), which provides that a victim has a right to petition a CCA for a writ of mandamus, applies with respect to protections afforded by, *inter alia*, Mil. R. Evid. 412. *See* Article 6b(e)(4)(A), (C), UCMJ. Accordingly, if a victim believes a court-martial ruling violates any of these rights, "the victim may petition the Court of Criminal Appeals for a writ of mandamus to require the . . . court-martial to comply." Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1). "If granted, such a writ would require compliance with Article 6b, UCMJ." *In re KK*, 84 M.J. at 667 (citation omitted).

To prevail on a petition for a writ of mandamus, a petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *H.V.Z. v. United States*, 85 M.J. 8, 12 (C.A.A.F. 2024) (internal quotation marks omitted) (quoting *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (per curiam) (citing *Cheney*, 542 U.S. at 380–81)).

---

[11] *AG v. Hargis*, 77 M.J. 501, 504 (A. Ct. Crim. App. 2017).

[12] *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009) (order).

[13] *United States v. Kanner*, No. 07-CR-1023-LRR, 2008 U.S. Dist. LEXIS 108345, at *22 (N.D. Iowa 2008) (order).

[14] *United States v. Heaton*, 458 F.Supp.2d 1271, 1272 (D. Utah 2006) (mem.).

[15] *United States v. Kaufman*, Nos. 04-40141-01, 02, 2005 U.S. Dist. LEXIS 23825, at *5 (D. Kan. 2005) (mem. and order).

[16] *See* 10 U.S.C. § 1044e.

"A military judge's decision warranting reversal via a writ of mandamus 'must amount to more than even gross error; it must amount to a judicial usurpation of power . . . or be characteristic of an erroneous practice which is likely to recur.'" *In re KK*, 84 M.J. at 667 (omission in original) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (per curiam)).

### b. Mil. R. Evid. 412 Generally

The *Manual for Courts-Martial* recognizes certain privileges that may limit the availability of evidence at a court-martial. In particular, Mil. R. Evid. 412 provides that evidence of an alleged victim's sexual predisposition and evidence that an alleged victim engaged in other sexual behavior is generally inadmissible. Mil. R. Evid. 412(a). "'Sexual behavior' includes any sexual behavior not encompassed by the alleged offense," while "'sexual predisposition' refers to a victim's mode of dress, speech, or lifestyle . . . that may have a sexual connotation for the fact finder." Mil. R. Evid. 412(d). The intent of the Rule is to "shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to sexual offense prosecutions." *Ellerbrock*, 70 M.J. at 318 (alteration and citation omitted).

One exception to the Rule is Mil R. Evid. 412(b)(2) makes admissible "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the misconduct, if offered by the accused to prove consent."

Another exception to the Rule is when exclusion of the evidence would violate an accused's constitutional rights. Mil. R. Evid. 412(b)(3). To show that the exclusion of evidence would violate an accused's constitutional rights, the accused must show that the evidence "is relevant, material, and favorable to his defense," "and thus whether it is necessary." *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004) (citations omitted). The term "favorable" means the evidence is "vital." *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citations omitted). It is the accused's burden to demonstrate an exception applies. *Banker*, 60 M.J. at 223 (citations omitted).

Evidence falling under the Mil. R. Evid. 412(b)(3) exception is not weighed against a victim's privacy and is instead only analyzed under Mil. R. Evid. 403; that is, a military judge determines whether the probative value of such evidence outweighs the danger of unfair prejudice. Mil. R. Evid. 412(c)(3). Evidence challenging the credibility of key government witnesses may fall under this exception. *See, e.g., United States v. Williams*, 37 M.J. 352, 360–61 (C.M.A. 1993). "If after the application of [Mil. R. Evid.] 403 factors the military judge determines the probative value of the proffered evidence outweighs the danger of unfair prejudice, it is admissible no matter how embarrassing it might be to the alleged victim." *Gaddis*, 70 M.J. at 256.

"In applying [Mil. R. Evid.] 412, the judge is not asked to determine if the proffered evidence is true . . . . Rather, the judge serves as gatekeeper deciding first whether the evidence is relevant and then whether it is otherwise competent, which is to say, admissible under [Mil. R. Evid.] 412." *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010) (omission in original) (quoting *Banker*, 60 M.J. at 224). In *United States v. Leonhardt,* our superior court concluded, "Because the proffered evidence was relevant, material, and its probative value outweighed the danger of unfair prejudice, it met the exception for constitutionally-required evidence and was admissible under Mil. R. Evid. 412(b)(1)(C)." 76 M.J. 821, 828 (C.A.A.F. 2017) (citation omitted).

### c. Mil. R. Evid. 412 and other Rules of Evidence

Our sister court considered the intersection of Mil. R. Evid. 412 and other rules of evidence. *See United States v. Schelmetty*, No. ARMY 20150488, 2017 CCA LEXIS 445 (A. Ct. Crim. App. 30 Jun. 2017) (mem.). It concluded that it was clear that "Mil. R. Evid. 412 trumps Mil. R. Evid. 106 and 304(h)(2). That is, if a statement would be admissible under Rule 304(h)(2), but is inadmissible under Rule 412, it remains inadmissible. For Rule 412 to have any effect it has to apply to evidence that otherwise would have been admissible." *Id.* at *13. "Put differently, a rule that serves to exclude evidence only when it was already inadmissible would serve no purpose." *Id.*; *see also United States v. Wordlaw,* No. ARMY 20230235, 2025 CCA LEXIS 102, at *26 n.16 (A. Ct. Crim. App. 12 Mar. 2025) (unpub. op.) ("[T]he rule of completeness is still subject to [an] admissibility review under Mil. R. Evid. 412.").

This court too has reviewed how the Military Rules of Evidence intersect. In *United States v. Rosales*, there was some evidence related to the victim's sexual history trial defense counsel were attempting to admit through the accused's confession. 74 M.J. 702, 705 (A.F. Ct. Crim. App. 2015). Ultimately, the military judge ruled the Mil. R. Evid. 412 evidence was constitutionally required, but the military judge ordered the evidence be admitted through the victim herself, not the confession. In our review, this court concluded:

> Had the hearsay statements at issue regarding the wife's conduct at the afterparty been offered through a source other than the appellant's confession, we would have no difficulty concluding that the military judge acted within his discretion in directing that this evidence come in through cross-examination of the victim. The military judge's ruling did not limit the appellant's opportunity to confront, cross-examine, nor present a defense. He simply placed constitutionally-permissible restrictions on the manner in which the evidence would be received.

*Id.* at 706; *see also United States v. Sousa*, 72 M.J. 643, 649 (A.F. Ct. Crim. App. 2013) (where a military judge's exclusion of one form of evidence pursuant to Mil. R. Evid. 412 was not error because trial defense counsel was able to cross-examine the victim about the evidence instead).

### 3. Analysis

We have previously held that a petitioner may petition this court to adjudicate the merits of a military judge's ruling related to Mil. R. Evid 412 under Articles 6b(e)(4)(A) and 6b(e)(4)(C), UCMJ. *See In re HF*, Misc. Dkt. No. 2025-04, 2025 CCA LEXIS 267, at *12–13 (A.F. Ct. Crim. App. 13 Jun. 2025) (unpub. op.). In the case before us, Petitioner filed her petition under Article 6b(a)(9), UCMJ, without specific reference to either previously upheld, or any, provision under Article 6b(e), UCMJ, giving us authority to intervene. While the best practice in filing for relief with this court shall be with specificity, enumerating which provision(s) of the Article grant us authority to review and consider for relief, our review of this petition, and the plain reading of this issue and filings before us, leaves us convinced we have standing to review this issue under Articles 6b(e)(4)(A), and 6b(e)(4)(C), UCMJ.[17]

Before this court, Petitioner argues the military judge violated her right to be "treated with fairness and with respect for her dignity and privacy" under Article 6b(a)(9), UCMJ, by finding the proffered Mil. R. Evid 412 "admissible under one or more of the enumerated exceptions" because: (1) "the evidence is not relevant or material;" (2) "the military judge did not employ the correct legal standard required under Mil. R. Evid. 412(c)(3) when weighing the probative value against the unfair prejudice" to "show consent;" and (3) the military judge did not "employ the correct legal standard" when she found the evidence "otherwise admissible" because the evidence is "hearsay" or "inadmissible character evidence."[18]

We have carefully considered Petitioner's claims. We find Petitioner has failed to show that in any instance her right to issuance of the writ is clear and indisputable and that the issuance of the writ is appropriate under the circumstances. *See Hasan*, 71 M.J. at 418.

To begin, Petitioner has a right to be reasonably heard on this evidence at trial, and the record shows the military judge properly gave her this right and considered her position prior to making her ruling.

---

[17] While not dispositive, we also note there was no objection by the RPI or the Government on the issue of standing in this case.

[18] In his brief, the RPI argues Petitioner's supplemental brief raised "new" claims not preserved in her initial filing with this court which are therefore untimely. We disagree and take Petitioner's initial filing and granted supplemental brief as one timely claim.

Petitioner alleges the military judge ruled admissible under Mil. R. Evid. 412 irrelevant or immaterial evidence, but the record does not support such a finding. Petitioner has provided no binding authority for us to conclude the military judge's application of Mil. R. Evid. 412 was erroneous such that it is clear and indisputable that a writ should issue. The record also does not support that the military judge made "more than even gross error" amounting "to a judicial usurpation of power" or "characteristic of an erroneous practice which is likely to recur" as is required for the writ to issue. *In re KK*, 84 M.J. at 667 (citation omitted).

Regarding relevance and materiality, Petitioner does not make a substantially different argument now in this writ than she did at trial as to why this evidence should not be admitted, and we find the military judge did not clearly err in deciding the requested evidence was relevant and material, and therefore admissible. After our review of the record, we believe the military judge's findings of fact and conclusions of law were supported by the evidence and within the range of discretion for the judge to admit. The record shows the military judge relied on cases provided by both trial defense counsel and Petitioner at trial, carefully considered and found facts by a preponderance of the evidence and ruled narrowly within the scope of Mil. R. Evid. 412—even more narrowly than was originally requested by the RPI. We find the military judge's findings of fact and conclusions of law were not clearly or indisputably outside of her authority or discretion.

We are also convinced the military judge applied the correct legal standard when balancing the evidence as was required—she properly laid out each category of evidence presented by Petitioner, and although not with great specificity, balanced the weight of admission against potential harms. Ultimately, the military judge determined that the RPI has met his burden for limited inclusion of evidence under the appropriate provisions. Because the RPI met his burden, the military judge correctly found that the information requested is relevant and necessary for the Defense's case, and the military judge properly balanced any potential prejudice against the probative value. We note that when the issue is constitutional, the military judge need not balance Petitioner's privacy interest as part of the Mil. R. Evid. 403 balancing analysis. Understanding the details of the evidence in question are sensitive, the law followed by the military judge properly allows the concerns of Petitioner to be balanced against the RPI's interests and tip in favor of the RPI and inclusion.

Finally, we find no merit to Petitioner's allegation that the military judge erred in her Mil. R. Evid. 412 ruling by finding the evidence "otherwise admissible." The military judge, after conducting a closed hearing covering Mil. R. Evid. 412 evidence and applying the appropriate law, found the categories of evidence (a)–(h) met the requirements to be admitted under *that* Rule. The

plain reading of her ruling limits it only to the confines of Mil. R. Evid 412. We note her ruling says nothing of any other rules of evidence or how, if at all, she would rule on additional objections.[19] Further, Petitioner and the parties did not make these arguments at trial, likely because they were not ripe at that phase of the trial. We will not further weigh in on the potential merits, if any, of such objections during an ongoing court martial.

We take this opportunity to emphasize that Mil. R. Evid. 412 works with, and does not supersede, other rules of evidence. Parties to the trial, and military judges, have wide latitude to direct the way information is admitted at trial at all phases. The first step in determining if evidence of sexual disposition could be admitted in a trial is making sure it meets an exception to the rule of exclusion under Mil. R. Evid. 412. As the United States Army Court of Criminal Appeals noted, that order makes sense; "[I]f a statement would be admissible under [a different rule] but is inadmissible under [Mil. R. Evid.] 412, it remains inadmissible. For [Mil. R. Evid.] 412 to have any effect it has to apply to evidence that otherwise would have been admissible." *Schelmetty*, 2017 CCA LEXIS 445, at \*12. Knowing the evidence overcomes the rule of exclusion as a starting point allows counsel to focus efforts at trial on "otherwise admissible evidence"—that is, otherwise, admissible in addition to Mil. R. Evid. 412. Again, nothing in this opinion should be read to imply that any of the evidence ruled admissible by the military judge under a Mil. R. Evid. 412 exception in this case is admissible, or inadmissible, in other ways. This opinion simply expresses our conclusion that the military judge did not clearly and indisputably err in her ruling as it related to Mil. R. Evid. 412, a ruling Petitioner was heard on at trial and resulting in a ruling she may appeal to this court.[20]

For all these reasons, we find Petitioner has not demonstrated the right to the issuance of the writ she seeks is clear and indisputable, and she has therefore failed to show the appropriateness of the requested relief.

---

[19] Military judges could clarify the scope of their Mil. R. Evid. 412 rulings, stating the ruling should not be construed to allow for the total suspension of other military rules of evidence or viewed as a ruling on the form or admissibility of the evidence otherwise. As we saw in *Rosales,* military judges can and may be welcomed to shape the form of the evidence found admissible under Mil. R. Evid. 412. We note, however, that such express limitations in rulings are not required.

[20] Such is not the case with most other rules of evidence; Article 6b, UCMJ, rights do not enumerate the right of victims to be heard on most other rules of evidence.

### B. Request for Protective Order

#### 1. Additional Background

On 9 December 2025, the military judge issued an order pursuant to R.C.M. 701 for trial counsel to "provide discovery of the records related to [Petitioner's surgery] . . . and records of laboratory tests within the six months following [Petitioner's] surgery."[21] Government counsel complied with the military judge's order and obtained Petitioner's medical records.

On 11 December 2025, Petitioner, through counsel, filed a motion with the military judge requesting the military judge issue a protective order "to prohibit the Government and [trial d]efense counsel from disclosing information from [Petitioner's] medical records" and "to destroy all copies immediately proceeding [sic] this trial." Petitioner's motion also sought "to require the parties to destroy surplus medical records provided they fall outside the scope of the Military Judge's 9 December [2025] ruling." Petitioner alleged the "medical records were obtained outside the date ranges permitted by this [c]ourt, along with other private and confidential medical history not related to [Petitioner's specific] surgery."

The next day, on 12 December 2025, via email, the military judge acknowledged receipt of Petitioner's request and ruled "the court will not consider this filing" because Petitioner did "not have standing under Article 6b[, UCMJ,] as to this issue."

On 17 December 2025, the Government petitioned the military judge to "execute a protective order to prohibit Government and [trial defense counsel] from disclosing [Petitioner's] medical records and destroy all copies immediately proceeding [sic] the trial." Government's motion did not acknowledge the existence of or request the destruction of surplus medical records provided that are outside the scope of the military judge's 9 December 2025 ruling.

The Defense responded via email to the Government's requested protective order, objecting to the request as written but not objecting to a "protective order generally" and averring that the order should account for the documents to be destroyed "after the completion of [a]ppellate review."

The military judge ruled that "Trial and Defense Counsel will each maintain one (1) copy of [Petitioner's] medical records for their respective trial teams and may provide one (1) copy to each of their confidential experts . . . . Victim's Counsel may be provided with one copy" as well. The military judge prohibited additional copies of the documents from being made without permission, required all notes made from review of the documents be protected,

---

[21] The details of this ruling are discussed more in Petitioner's third issue below.

ordered "all personally identifiable information contained in the records" should be protected by the applicable laws and regulations, and stated that parties may keep a copy until the completion of appellate review. The ruling is silent on the existence of, or destruction of, surplus records provided or destroyed, if any.

### 2. Law

We consider the same law listed above in Section II.A.2 relating to Article 6b, UCMJ, rights and standards.

"Victims involved in court-martial proceedings do not have the authority to challenge every ruling by a military judge with which they disagree; but may assert their rights enumerated in Article 6b, UCMJ, in the *Manual for Courts-Martial*, and under other applicable laws." *In re KK*, 84 M.J. at 669. "[A p]etitioner's right to be treated with fairness does not entitle her to a trial date of her choosing," but are "factor[s] for the military judge to consider in balancing competing interests and making scheduling decisions." *Id.* at 670.

"Article 6b, UCMJ, delineates eight[22] victim rights, and only one of those rights—Article 6b(a)(4)—specifically provides for an opportunity to be heard." *In re VM*, Misc. Dkt. No. 2023-04, 2023 CCA LEXIS 290, at *7–8 (A.F. Ct. Crim. App. 11 Jul. 2023) (unpub. op.). This court concluded when this is the case, a "[p]etitioner does not have a statutory right to be heard on [those] rights," but that the "absence of a specific statutory right to be heard does not mean that a military judge is *prohibited* from considering a victim's effort to exercise Article 6b, UCMJ, rights." *Id.* at *8. A military judge concluding there is a prohibition on considering the information is "mistaken." *Id.*

### 3. Analysis

We have not previously held that a petitioner may petition this court to adjudicate the merits of a military judge's ruling related to a failure to issue a protective order under any Article 6b(e), UCMJ, provision. In this case, Petitioner filed her petition under Article 6b(a)(9), UCMJ, without specific reference to any provision under Article 6b(e), UCMJ, granting us authority to provide relief. Again, while the best practice in filing for relief with this court under this and all articles shall be to cite the specific provision(s) authorizing this court's review, our plain reading of this issue and the filings leaves us convinced we have standing to review this issue under Article 6b(e)(4)(A), UCMJ, given Petitioner's express reference in the file to Article 6b(a)(9), UCMJ, and given no objection by the parties to her standing on this issue.

---

[22] Article 6b(a), UCMJ, now delineates nine rights for victims. *See* Article 6b(a), UCMJ (2024 *MCM*).

Next, we ask ourselves if the issue is moot given that since the initial filing of this writ the military judge has issued a protective order for Petitioner's disclosed medical records. We agree with Petitioner that if there were a discrepancy in the scope of the medical records requested and those produced, that Petitioner may still have a claim to contest the military judge's ruling. However, there is nothing in the record before us which shows the disclosed records exceed the scope of the military judge's original order and therefore may require a writ to intervene. Absent such a showing, we find Petitioner has failed to factually support a claim to show this writ is not moot.

Assuming *arguendo* that Petitioner's assertion the scope of the records differed enough to create an issue is true, we still find nothing in the record that shows clear and indisputable error by the military judge when she ruled Petitioner did not have standing to request a protective order. While a military judge could review a request from a victim related to a privacy interest as a "factor[ ] . . . to consider in balancing competing interests" given such a request has roots in Article 6b, UCMJ, absent precedent to the contrary, the military judge did not clearly and indisputably err. *See In re VM*, unpub. op. at *7.

## C. Motion to Compel Discovery of PHI under R.C.M. 701

### 1. Additional Background

#### a. Filings

On 6 December 2025, the Defense moved the trial court to "immediately produce" Petitioner's "medical records related to her [specific] surgery at Fort Belvoir [Medical Hospital], Virginia" and "any laboratory results" where they listed specific examples, under R.C.M. 701. The defense request was limited to a time-period spanning "six months prior to" and "six months after" the specific surgery.

The Defense alleged that the surgery occurred in a military hospital located at Fort Belvoir owned by the Defense Health Agency (DHA), and argued DHA was a military "authority" in part because no military court has determined it was not. The Defense also relied on the ruling by the United States Court of Appeals for the Armed Forces (CAAF) in *H.V.Z.*, 85 M.J. at 13, where the CAAF held it was not error for a military judge to conclude a military medical group was a military authority.

On 8 December 2025, the Government opposed the defense motion as untimely; it further argued the evidence should fall under R.C.M. 703(g) instead of R.C.M. 701 because "this information is not contained in the files of law enforcement authorities that have participated in the investigation" and therefore "possession, custody or control of military authorities" because "military medical facilities are not law enforcement facilities." The Government also argued that the requested information was irrelevant.

### b. Ruling

On 9 December 2025, the military judge issued an order granting the Defense's motion in part. The military judge's findings of fact included, *inter alia*, that Petitioner did undergo the specific surgery at the Fort Belvoir Medical Hospital in May 2023. The military judge found that Specifications 1 and 2 of Charge II are alleged to have occurred on or about 24 October 2023,[23] that Petitioner had the surgery in question in May 2023, and that Petitioner went to an emergency room of a different military installation on 22 October 2023 and 25 October 2023.

The military judge detailed the procedural history of the defense requests for discovery from the Government, and outlined the letter from the Defense's forensic pathologist who reviewed what little information the Defense had and detailed what medical records he believed were missing and how that missing information would benefit the Defense's case. The Defense believed that because Petitioner had the specific surgery in May 2023, a patient who had that surgery may be at a different risk for bruising, a fact which was relevant to Petitioner's later visits to the emergency room related to the charged offenses.

In her ruling, the military judge gave the following analysis when determining whether to analyze this defense request as a request under R.C.M. 701 or R.C.M. 703:

> The statutory definition of "Military Departments" only includes the Army, Navy, and Air Force. 10 U.S.C. [§] 101(a)(8). The statutory definition of "Defense Agency" means "an organizational entity of the Department of Defense that is established by the Secretary of Defense . . . to perform a supply or service activity common to more than one military department or that is designated by the Secretary of Defense as a Defense Agency." Nothing in the definition of a Defense Agency excludes it from the common definition of "military authorities" and nothing within the definition of "Military Department" makes the Army, Air Force, and Navy the only "military authorities" for purposes of R.C.M. 701. The Defense Health Agency is an authority, within the Department of Defense, which is the executive department responsible for providing military power on behalf of the nation. Indeed, if Defense Agencies were not "military authorities" such obviously military authorities as DFAS, DISA, and DLA would

---

[23] Our review of the record and charge sheet shows the allegation is alleged to have occurred on or about 24 October 2023, and we assume the military judge's reference to 24 October 2025 is a scrivener's error on the part of the military judge.

be outside the scope of "military authorities." These are clearly military authorities despite their status as Defense Agencies.

The [c]ourt finds that the common definition of "military authorities" encompasses a Military Treatment Facility (MTF) and thus, records kept by an MTF are subject to R.C.M. 701.

The military judge then found that the records of Petitioner's specific surgery and laboratory results in the six months after the surgery in May 2023 were relevant to the Defense's preparation, based on the Defense's forensic pathologist's assertions, in order for the Defense to review the records and make "strategic decisions regarding its case."

Accordingly, pursuant to R.C.M. 701, the military judge ordered trial counsel to "provide discovery of the records related to [Petitioner's surgery] . . . and records of laboratory tests within the six months following [Petitioner's] surgery." The military judge denied the defense request for the laboratory records pre-dating the surgery. Trial counsel were further ordered to inform the Defense and military judge of records that were privileged or not subject to disclosure and the basis for nondisclosure.

### 2. Law

We again consider the same law listed above in Section II.A.2 relating to Article 6b rights and standards.

In *H.V.Z.*, the defense sought to compel mental health records under R.C.M. 701(a)(2)(A) that were "*in the possession, custody, or control of military authorities*, and [met] certain other requirements." 85 M.J. at 13. The CAAF held that R.C.M. 701(a)(2)(B) gives "defense access to 'the results or reports of physical or mental examinations . . . which are within the possession, custody, or control of military authorities' and meet certain other requirements." *Id.* (omission in original) (internal quotation marks omitted). The entity in question possessing the requested documents was a military medical group, and the military judge in that case found the medical group was a military authority for the purpose of R.C.M. 701. *Id.* at 14. The CAAF concluded because the petitioner failed to cite anything which "narrowed the definition of 'military authorities' in R.C.M 701(a)(2)(A), whether the military judge clearly and indisputably erred turn[ed] on whether the plain meaning of 'military authorities' can be construed to include the [military medical group]." *Id.* at 13. After the CAAF considered the "deference afforded to the military judge in the procedural posture of this case," the CAAF concluded it could. *Id.* at 13–14.

Factors the CAAF considered in reviewing *H.V.Z.* were that the place in question was a "medical treatment facility located on [an] Air Force Base that

serve[d] active duty military members, retirees, and their families. The [medical group was] commanded by an Air Force officer and its mission include[d] 'military readiness.'" *Id* at 14.

In determining if this group was a "military authority," for the purposes of R.C.M. 701(a)(2)(A), the CAAF reviewed the definition of "authority" as "[a]n official organization or government department with particular responsibilities and decision-making powers; [especially], a governmental agency or corporation that administers a public enterprise." *Id.* (quoting *Authority*, BLACK'S LAW DICTIONARY (11th ed. 2019)). The court concluded that "[i]n the absence of any express limiting language in the rule or any limiting guidance" in precedent, the military judge did not clearly and indisputably err in finding the military medical group was a military authority for such a purpose. *Id.*

### 3. Analysis

We have previously found that a petitioner may petition this court to adjudicate the merits of a military judge's ruling related to discovery of medical records under Article 6b(e)(4)(A), UCMJ. *See In re HVZ*, Misc. Dkt. No. 2023-03, 2023 CCA LEXIS 292 (AF. Ct. Crim. App. 14 Jul 23) (unpub. op.), *rev'd on other grounds*, 85 M.J. 8 at *12 (C.A.A.F. 2024). Again, Petitioner filed her petition under Article 6b(a)(9), UCMJ, without specific reference to the previously upheld, or any, provision under Article 6b(e), UCMJ, giving us authority to review the matter. While the best practice in filing for relief with this court shall be with specificity, enumerating which provision(s) of the Article grant us authority to review and relieve, our review of this petition, and the plain reading of this issue and filings before us, leaves us convinced we have standing to review this issue under Article 6b(e)(4)(A), UCMJ.[24]

Recently, when asked "whether [a] military judge committed clear and indisputable error when he determined that [petitioner's] health and mental health records were in the possession, custody, or control of military authorities," the CAAF held he did not. *H.V.Z.*, 85 M.J. at 13. The court noted there was no dispute that in H.V.Z.'s case, the medical group was "part of the military" and a finding as such was not clear error. *Id.* at 14.

We find the CAAF's decision in *H.V.Z.* informative on this issue and conclude the military judge did not clearly or indisputably err in her determination that DHA is a military authority for the purposes of R.C.M. 701. Not only did the military judge correctly review and apply the correct law, her analysis on what constituted a military authority in this case is not "a judicial usurpation of power . . . [or] characteristic of an erroneous practice which is likely to

---

[24] While not dispositive, we again note there was no objection by the RPI or the Government on the issue of standing in this case.

recur." *In re KK*, 84 M.J. at 667. We encourage future rulings on the issue to review factors the CAAF highlighted in *H.V.Z.* (*i.e.,* where a medical treatment facility is located, clientele it serves, who if anyone commands the facility, its mission), but acknowledge such analysis is not required or dispositive of a military judge's discretion to make such a finding. Here the military judge ordered disclosure of limited medical records of Petitioner from an Army medical facility, on a military installation, that were not otherwise privileged, and nothing about such a ruling is clearly and indisputably worthy of relief.

For all these reasons, we find Petitioner has not demonstrated the right to the issuance of the writ she seeks is clear and indisputable, and Petitioner has therefore failed to show the appropriateness of the requested relief.

## III. CONCLUSION

Petitioner's petition for extraordinary relief in the nature of a writ of mandamus under Article 6b, UCMJ, 10 U.S.C. § 806b, dated 16 December 2025, is **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court